


1  **LUJAN & WOLFF** LLP
Attorneys at Law
2  DNA Building, Suite 300
238 Archbishop Flores Street
3  Hagåtña, Guam 96910
Telephone (671) 477-8064/5
4  Facsimile (671) 477-5297

5  *Attorneys for Plaintiff*
*South Pacific Petroleum Corporation*

6

7  IN THE UNITED STATES DISTRICT COURT

8  FOR THE DISTRICT OF GUAM

9

10  SOUTH PACIFIC PETROLEUM
CORPORATION,

11  Plaintiff,
vs.

12  MB GUAM, INC., BRIAN Y. SUHR, MICHAEL S.
13  HAHM, WOO JONG KIM, GI TAE KIM,
ROBERTO DALALO, SOON JA CHOI, TERRY C.
14  LEE, JAEHA SHIN, BYONG SIK SOH, YOONGKI
INDUSTRY CO., LTD., CHANG ROK SOH,
15  PARADISE FUND I, L.P., AND DOES 1-100.,

16  Defendants.

CIVIL CASE NO. CV **15-00042**

**VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF; AND DAMAGES FOR
FRAUD, BREACH OF FIDUCIARY
DUTIES, RACKETEERING AND
RELATED CLAIMS**

17

18  Plaintiff South Pacific Petroleum Corporation, a Guam corporation ("SPPC"), through its
19  counsel of record, hereby alleges the following:

20

21  **JURISDICTION**

22  1.  Jurisdiction over claims arising under 18 U.S.C. § 1962, 28 U.S.C. § 2201, and
23  § 2202 is proper in this Court pursuant to 18 U.S.C. § 1331. Supplemental jurisdiction over the
24  common law and state claims is proper pursuant to 28 U.S.C. § 1367.

25  2.  This Court also has jurisdiction over this action pursuant to 18 U.S.C. § 1332: The
26  amount in controversy exceeds $75,000.00, and this action involves citizens of Guam and citizens
27  or subjects of South Korea.

28

*ORIGINAL*

3. Additionally, this Court has jurisdiction over this matter pursuant to 18 U.S.C. §1965(a) because some or all of the defendants reside, are found, have an agent, or transact affairs in this district.

4. Additionally and/or alternatively, this Court has jurisdiction over this matter and the defendants pursuant to 18 U.S.C. §1965(b) because the ends of justice require that these parties be brought before this Court.

## VENUE

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of the action is situated in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of the action is situated in this district.

## PARTIES

7. Plaintiff SPPC is, and at all relevant times herein was, a corporation organized and existing under the laws of Guam with its principal place of business in Guam.

8. Defendant MB Guam, Inc., a Guam corporation ("MBG"), is, and at all relevant times herein was, a corporation organized and existing under the laws of Guam with its principal place of business in Guam.

9. Defendant Brian Y. Suhr ("Suhr"), is, and at all relevant times herein was, an individual and a resident of Guam. In addition, at all times relevant herein Suhr acted as an officer and director to SPPC and, as an officer, director, and/or owner of MBG.

10. Defendant Michael S. Hahm ("Hahm"), is, and at all relevant times herein was, an individual and a resident of Guam. In addition, at all times relevant herein Hahm acted as a officer and director to SPPC and, as an officer, director, and/or owner of MBG.

11.    Defendant Gi Tae Kim ("GT"), upon information and belief, is, and at all relevant times herein was, an individual and a resident of South Korea. In addition, GT, at relevant times herein was an officer and/or director of SPPC.

12.    Defendant Woo Jong Kim ("WJ"), upon information and belief, is, and at all relevant times herein was, an individual and a resident of South Korea. In addition, at times relevant herein WJ was an officer, director and/or owner of MBG. At relevant times herein, WJ represented himself to others that he had control, ownership and/or influence over SPPC. At all relevant times herein, WJ had actual knowledge that Suhr, Hahm, GT and others owed fiduciary duties to SPPC.

13.    Defendant Roberto Dalalo ("Dalalo"), is, and at all relevant times herein was, an individual and a resident of Guam. In addition, at all times relevant herein Dalalo acted as the Comptroller and Secretary to SPPC.

14.    Defendant Soon Ja Choi ("Choi"), is, and at all relevant times herein was, an individual and a resident of Guam. In addition, at all times relevant herein, Choi was the alleged holder of shares in SPPC, and subject to the control of WJ.

15.    Defendant Terry C. Lee ("Lee"), upon information and belief, is, and at all relevant times herein was, an individual and a resident of California. In addition, at all times relevant herein, Lee was the alleged holder of shares in SPPC, and subject to the control of WJ.

16.    Defendant Jaeha Shin ("Shin"), upon information and belief, is, and at all relevant times herein was, an individual and a resident of South Korea. In addition, at all times relevant herein, Shin was the alleged holder of shares in SPPC, and subject to the control of WJ.

17.    Defendant Byong Sik Soh ("Soh"), upon information and belief, is, and at all relevant times herein was, an individual and a resident of South Korea.

18.    Defendant Yoongki Industry Co., Ltd. ("Yoongki"), upon information and belief, is, and at all relevant times herein was, a foreign corporation organized and existing under the laws of South Korea with its principal place of business in South Korea.

1    19.    Defendant Chang Rok Soh, also known as "Changrok Soh" ("Chang"), upon
2    information and belief, is, and at all relevant times herein was, an individual and a resident of
3    South Korea.

4    20.    Defendant Paradise Fund I, L.P. ("Paradise LP"), is a limited partnership
5    organized and existing under the laws of Guam with its principal place of business in Guam.

6    21.    Defendants DOES 1 through 100 are individuals or entities the true identities of
7    which are unknown to SPPC at this time who therefore sues these defendants by such fictitious
8    names. SPPC will endeavor to amend this pleading to allege their true names and identities when
9    ascertained. These fictitiously named defendants either were involved in or benefited from the
10   acts complained of herein, participated with the defendants or others in the wrongful acts and
11   course of conduct complained of herein, or otherwise caused the damages sought herein.

13   **FACTUAL ALLEGATIONS**
14   **SPPC**

15   22.    SPPC is a corporation organized and existing under the laws of Guam.  On or
16   about June 29, 2000, SPPC filed at the Department of Revenue and Taxation its Articles of
17   Incorporation, Sworn Statement of Treasurer, and Bylaws.  Subsequently, SPPC received its
18   corporate certificate from the Department of Revenue and Taxation.

19   23.    SPPC was formed for the principal purpose of engaging in the operation of a
20   petroleum company and related enterprises in Guam and other locations.  SPPC is not in the
21   business of real property acquisition and development, other than in furtherance of its operation
22   of a petroleum company and related enterprises.

23   24.    At relevant times herein the SPPC board of directors consisted of Suhr, Hahm, GT,
24   and Peter Leon Guerrero.  Each board member owed fiduciary duties to SPPC and its
25   shareholders and each board member had actual knowledge of the fiduciary duties each board
26   member owed to SPPC and each other board member respectively owed to SPPC.

25.  At relevant times herein the SPPC shares were allegedly held as follows: Soon Ja Choi, Terry C. Lee, Jaeha Shin, Brian Suhr, Michael Hahm, Paul Kim, and Peter Leon Guerrero.

## MB GUAM, INC.

26.  MBG is a corporation organized and existing under the laws of Guam.

27.  At times relevant herein, the MBG officers, directors, and/or owners were Suhr, Hahm, and WJ.

28.  MBG is not an affiliate or subsidiary of SPPC and is an entity entirely separate and apart from SPPC.

29.  Upon information and belief, MBG was formed for the purpose of engaging in the fraudulent loan transaction alleged herein, and at the relevant times herein owned no assets and had no capitalization.

## SOH

30.  Defendant Soh, upon information and belief, is, and at all relevant times herein was, an individual and a resident of South Korea.

31.  Upon information and belief, at all relevant times herein, Soh did not have a business license authorizing it to conduct business in Guam.

32.  Upon information and belief, at all relevant times herein, beginning prior to or around 2007 through the present, Soh conducted foreign bank business in Guam without having first obtained a Guam business license.

## YOONGKI

33.  Defendant Yoongki, upon information and belief, is, and at all relevant times herein was, a foreign corporation organized and existing under the laws of South Korea with its principal place of business in South Korea.

34.     Upon information and belief, at all relevant times herein, Yoongki was engaged in the business of renting real estate in South Korea, and did not have a business license authorizing it to conduct business in Guam.

35.     Upon information and belief, at all relevant times herein, Yoongki did not have a foreign corporation certificate issued by the Guam Department of Revenue and Taxation ("DRT").

36.     Upon information and belief, at all relevant times herein, Yoongki did not have a foreign bank certificate issued by DRT.

37.     Upon information and belief, at all relevant times herein, beginning prior to and around 2007 through the present, Yoongki conducted foreign bank business in Guam without having first obtained a Guam business license, a Guam foreign corporation certificate, or a Guam foreign bank certification.

## CHANG

38.     Defendant Chang, upon information and belief, is, and at all relevant *times herein* was, an individual and a resident of South Korea.

39.     Upon information and belief, at all relevant times herein, Chang directly participated in the fraudulent transactions alleged herein, or acted as the agent, or purportedly acted as the agent, of Soh and Yoongki with respect to the fraudulent transactions alleged herein.

40.     Upon information and belief, at all relevant times herein, Chang did not have a business license authorizing it to conduct business in Guam.

41.     Upon information and belief, at all relevant times herein, beginning prior to or around 2007 through the present, Chang, on behalf of himself or on behalf of Soh and Yoogki, conducted foreign bank business in Guam without having first obtained a Guam business license.

Case 1:15-cv-00042   Document 1   Filed 11/09/15   Page 6 of 40

## PARADISE LP

42.     Defendant Paradise LP is a limited partnership organized and existing under the laws of Guam.  On or about December 1, 2006, Paradise LP filed at the Department of Revenue and Taxation its Certificate of Limited Partnership.

43.     Paradise LP was formed for the principal purpose of investing in and developing real estate in the Territory of Guam.

44.     At relevant times herein, upon information and belief, the General Partner of Paradise LP was Sunwill Investments, LLC, and the Limited Partners of Paradise LP were MCC Capital, LLC, Richard B.C. Lee, and Defendant Chang.

45.     Upon information and belief, Defendant WJ was the Manager and a Member of Sunwill Investments, LLC, the General Partner of Paradise LP, and therefore had general control over Paradise LP.

46.     Paradise LP is not an affiliate of SPPC and is an entity entirely separate and apart from SPPC.

47.     Pursuant to the terms of the Certificate of Limited Partnership of Paradise LP, Defendant Chang, whether on his own behalf or purportedly on behalf of Soh and Yoongki, contributed an amount equal to Three Million Dollars ($3,000,000.00) to Paradise LP with respect to a thirty percent (30%) limited partnership interest in the partnership.

48.     Upon information and belief, at all relevant times herein, Paradise LP directly participated in the fraudulent transactions alleged herein.

## FRAUDULENT LOAN SCHEMES

49.     On or about the year 2000, the patriarch of the present SPPC majority shareholders, Sang Yeon Hahn ("SY Hahn"), established SPPC as a Guam corporation and a major Guam business concern.  SY Hahn hired Suhr and Hahm as SPPC President and Vice President.  Subsequently, in or about February 2002, SY Hahn suffered a debilitating stroke which resulted in the appointment of a guardian over him and the creation of a trust over some of

his assets, the trustee of which was WJ. During this period of debilitation and until the time of SY Hahn's death in August 2008, a dispute arose over the control and ownership of his assets. WJ, in association with Suhr, Hahm, GT, and others, and in breach of his fiduciary duties as trustee to SY Hahn's trust, exploited these circumstances in a pattern of activity designed to fraudulently and wrongfully misappropriate SY Hahn's assets, by false and fraudulent pretenses, concealing evidence of their wrongful activities from SY Hahn, SY Hahn's guardian, SY Hahn's family, and others, using the mail, the wire, telephone, facsimile, internet, e-mails, and letters, in interstate and foreign commerce, between Guam, Korea, and the United States.

50.     In furtherance of this fraudulent scheme, and as specifically raised and resolved in prior litigation before this Court in Hana Bank v. South Pacific Petroleum Corporation and Access Ypao, Inc., Civil Case No. CV 09-00012, WJ and others conspired to defraud SY Hahn and his estate by fraudulently effectuating the transfer of SY Hahn's majority-owned shares in SPPC to each of Defendants Choi, Lee and Shin, with full knowledge that no consideration would be paid for the shares; that each of them would essentially hold the shares as sham shareholders subject to WJ's control; and that WJ's fraudulent loan schemes would be accomplished pursuant thereto.

51.     In furtherance of this fraudulent scheme, and as specifically raised and resolved in prior litigation in the State of California, WJ and others conspired to defraud SY Hahn and his estate, embezzled millions of dollars and property from the SY Hahn estate and the SY Hahn Trust, and fraudulently effectuated the transfer of SY Hahn's shares in SPPC to persons under WJ's control. See Notice of Motion and Motion for Judgment, Notice of Entry of Judgment, and Supplement to Motion for Entry of Judgment, In re Matter of Sang Yeon Hahn Trust, Case No. BP108268, Superior Court of the State of California, Central District of the County of Los Angeles, copies of which are attached hereto as EXHIBIT 1.

52.     In furtherance of this fraudulent scheme, and prior to 2007, Suhr, Hahm, GT and WJ and others had real estate acquisition and development plans which were completely unrelated to SPPC. In furtherance of those plans, Suhr, Hahm, GT and WJ, and others set up

Case 1:15-cv-00042   Document 1   Filed 11/09/15   Page 8 of 40

companies and entities entirely separate and apart from SPPC. These entities included MBG and Paradise LP.

53.     Prior to 2007 SPPC had a senior loan outstanding ("Outstanding Loan") with Hanmi Bank in California which was secured by assets owned by SPPC. Pursuant to the Outstanding Loan, SPPC was prohibited from assuming further liability or indebtedness, including guaranteeing any other loans without the bank's consent. Otherwise, SPPC would be in default of its loan covenants under the Outstanding Loan. At all relevant times herein, the Outstanding Loan was and is a matter of SPPC record and was and is referenced in its audit reports and other related corporate documents.

54.     Suhr, Hahm, GT, Dalalo and WJ and others had actual knowledge of the Outstanding Loan and the covenant prohibiting SPPC from acquiring any further liability or indebtedness.

55.     At the beginning of 2007, Suhr, Hahm, GT and WJ in association with others schemed to enter into a series of fraudulent multi-million dollar loan transactions for themselves and for the companies and other entities that would benefit them or others personally, but would expose SPPC to extreme and unreasonable risk and financial ruin.

56.     Pursuant to the fraudulent loan schemes, Suhr, Hahm, GT and WJ and others, using their personal and financial relationships and associations with various Korean lenders, including Defendants Chang, Soh and representatives and agents of Defendant Yoongki, conspired with the Korean lenders to enter into multi-million dollar loan transactions for the benefit of the separate entities formed by Suhr, Hahm, GT and WJ.

57.     With respect to a majority of these various multi-million dollar loans, all agreed that they would purport to secure these loan transactions with fraudulently or wrongfully procured guarantees from SPPC. The guarantees would be incorporated as a part of each of the loan transactions and would be referenced and incorporated in each of the loan transaction documents therein. The enforcement of these fraudulently or wrongfully procured guarantees were raised and resolved in prior litigation before this Court in Hana Bank v. South Pacific Petroleum

1  Corporation and Access Ypao, Inc., Civil Case No. CV 09-00012, Mirae Asset Securities Co.,

2  Ltd., et al. v. South Pacific Petroleum Corporation and Hanom Investments, Inc., Civil Case No.

3  CV 09-00013, and Mirae Asset Securities Co., Ltd., et al. v. South Pacific Petroleum Corporation

4  and Access Ypao, Inc., Civil Case No. CV 09-00014.

5        58.     With respect to the multi-million dollar loan at issue here, Suhr, Hahm, GT, Dalalo

6  and WJ, with the knowledge and participation of Soh, Yoongki, and Chang, collectively knew a

7  loan transaction directly with MBG would raise genuine suspicion as MBG had absolutely no

8  assets and no capital under its corporate umbrella.  As such, rather than entering into a loan

9  transaction directly with MBG and purporting to secure such loan through a guarantee from

10  SPPC, Suhr, Hahm, GT, Dalalo and WJ, with the knowledge and participation of Soh, Yoongki,

11  and Chang, fraudulently or wrongfully procured a loan through SPPC for the direct benefit of and

12  use by, MBG, whether permanently or with the intention of subsequently transferring the

13  proceeds to Paradise LP directly or on behalf of Defendants Soh, Yoongki, and Chang.

14        59.     Upon information and belief, Soh, Yoongki, and Chang intended to and did invest

15  and contribute an amount equal to Three Million Dollars ($3,000,000.00) to Paradise LP, in

16  exchange for a thirty percent (30%) limited partnership interest in the partnership.

17        60.     Soh, Yoongki and Chang each had actual or constructive knowledge and/or knew

18  or should have known that MBG lacked the financial ability to re-pay the loan, that Paradise LP

19  was the intended recipient of the funds as a capital contribution by Chang, whether directly or

20  purportedly on behalf of Soh and Yoongki, that MBG was insufficiently capitalized to secure or

21  repay the indebtedness of the loan, that MBG was a sham entity, a vehicle designed to perpetrate

22  the fraudulent loan scheme, and that the fraudulent loan scheme would effectuate, on behalf of

23  Soh, Yoongki, and Chang, the legal impossibility of loaning an amount of Three Million Dollars

24  ($3,000,000.00) to SPPC in the capacity as borrowers, while obtaining a limited partnership

25  interest credit in Paradise LP for the contribution of the same proceeds to Paradise LP, through

26  multiple transfers involving the sham entity, MBG.  But, by obtaining the fraudulently or

27  wrongfully procured loan through SPPC, Soh, Yoongki and Chang knew they could, and intended

28

that they would, use the financial resources of SPPC to satisfy the loan transaction obligations, while simultaneously obtaining a potential lucrative partnership interest in Paradise LP. Soh, Yoongki and Chang also had or expected to have, in addition to their limited partnership interest in Paradise LP, joint business relationships or other economic opportunities with Suhr, Hahm, GT, WJ, Dalalo, MBG, and others, who engaged in the scheme. Plaintiff submits further discovery will uncover additional details related to the fraudulent loan scheme with respect to the participation of Soh, Yoongki, Chang, Paradise LP, MBG and the ultimate transfer and receipt of the purported loan proceeds at issue in this matter. As a part of the fraudulent loan scheme, Soh, Yoongki and Chang made certain that the loan transaction documents were drafted in a manner and contained language which would make avoidance of the loan transaction difficult to nullify. Further, in order to ensure that the scheme would succeed, all participants to it agreed that transaction documents associated with the fraudulent loan scheme would be concealed from, and that material facts relating thereto would be misrepresented to, SPPC shareholders, employees, attorneys, auditors, and others who may prevent the scheme from being committed.

61. In furtherance of the fraudulent loan scheme, and in particular, the concealment of the transaction documents from SPPC shareholders, employees, attorneys, auditors, and others who may prevent the scheme from being committed, the purported loan transaction, and all information related thereto, was specifically excluded from every annual audit of SPPC from the time of the purported transaction to the present.

62. In furtherance of the fraudulent loan scheme, and in particular, the concealment of the transaction documents from SPPC shareholders, employees, attorneys, auditors, and others who may prevent the scheme from being committed, the purported loan transaction, and all information related thereto, was specifically concealed and excluded from representations made by SPPC to Ernst & Young, on October 31, 2008. See letter from SPPC to Ernst & Young, dated October 31, 2008, attached hereto as EXHIBIT 2.

63. In furtherance of the fraudulent loan scheme, and in particular, the concealment of the transaction documents from SPPC shareholders, employees, attorneys, auditors, and others

who may prevent the scheme from being committed, the purported loan transaction, and all information related thereto, was specifically concealed and excluded with respect to representations made pursuant to subsequent amendments of the Outstanding Loan, to include amendments made as late as September 30, 2008. See Amendments to Outstanding Loan, attached hereto as **EXHIBIT 3**, whereby SPPC continued to represent the existence of no further Events of Default under the Outstanding Loan, and the continued applicability of the representations and warranties under the terms of the Outstanding Loan, each statement of which is expressly false and fraudulent.

64.     Prior to consummating the loan transaction scheme, Soh, Yoongki and Chang had actual or constructive knowledge, and/or knew or should have known, that Suhr, Hahm, GT and Dalalo, by virtue of their respective positions as officers and/or directors of SPPC, owed fiduciary duties to SPPC; that WJ had actual or constructive knowledge and/or knew or should have known that Suhr, Hahm, GT and Dalalo owed fiduciary duties to SPPC; that Suhr, Hahm, and WJ, and others were officers, directors, and/or owners of MBG and Paradise LP; that Suhr, Hahm, GT, Dalalo and WJ, and others perpetrated the fraudulent loan scheme for the benefits of themselves or other third parties affiliated with them; that WJ had misrepresented himself to others, other than Soh, Yoongki and Chang who knew otherwise, that he had ownership, control or influence over SPPC such that the purported SPPC loan could and would be fraudulently procured; that the fraudulent loan scheme would cause Suhr, Hahm, GT and Dalalo to violate their fiduciary duties to SPPC; that under the fraudulent loan scheme, Suhr, Hahm, GT, and others would have conflicts of interest which prohibited them from attempting to bind SPPC to the purported loan; that under the fraudulent loan scheme Suhr, Hahm, GT, Dalalo and WJ and others committed prohibited acts of self-dealing; and, that SPPC would receive no true consideration or actual benefit for the purported loan transaction.

65.     Prior to consummating the loan transaction scheme, and alternatively, as evidence of their complicity in it, Soh, Yoongki and Chang failed to exercise due diligence or to act in a commercially reasonable manner, under either Korean and American standards, regulations,

and/or laws, *inter alia*, in determining whether or not the prospective loan to be procured through SPPC could be duly and properly obtained; whether they were authorized by SPPC; whether they would be disclosed to the SPPC shareholders, would provide any benefits to SPPC, and whether or not SPPC had the ability to satisfy the loan in the event of default. Additionally, Soh, Yoongki and Chang failed to review SPPC's financials, credit standing, audit reports, or any other material or information customarily examined under commercially reasonable standards. Defendants Soh's and Yoongki's failure to exercise due diligence was part of the very fraudulent loan scheme itself.

66. Had Soh, Yoongki and Chang exercised due diligence, they would have discovered that the Outstanding Loan prohibited SPPC from entering into the prospective loan transaction without the lender's consent; that by examining the financial condition of SPPC that the financial liability resulting from the prospective loan, together with other fraudulently obtained guarantees, could cause SPPC to become insolvent or bankrupt; that by examining the corporate registries of SPPC and MBG, that the prospective loan would cause grievous breaches of fiduciary duty by Suhr, Hahm, GT and others, who served in conflicting representative capacities of authority both with SPPC, MBG and Paradise LP; that it would be financially illogical for SPPC to agree to be bound by the prospective loan with full knowledge that the proceeds of the loan transaction were being paid directly to and for the sole benefit of, MBG and/or Paradise LP, and that SPPC would receive no true consideration nor actual benefit for entering into the loan transaction but be subject to grave financial risk to SPPC's very existence; and, that Suhr, Hahm, GT, Dalalo and others would be abusing their representative authority of SPPC should they attempt to bind SPPC to the prospective loan.

## THE FRAUDULENT 3 MILLION DOLLAR LOAN

67. In furtherance of the fraudulent loan scheme, upon information and belief, Suhr, Hahm, GT, Dalalo, Choi, Lee, Shin, and others consented and agreed, purportedly in their respective capacities as officers and/or directors or shareholders of SPPC, or through the

fraudulent use of other corporate procedures, allegedly caused an SPPC resolution to be passed, or a corporate act to be taken, to *inter alia* bind SPPC to a loan transaction with Soh and Yoongki, and, to authorize SPPC to execute the purported loan transaction documents, with full knowledge that the proceeds of the loan transaction were being paid directly to and for the sole benefit of, MBG and/or Paradise LP, and that SPPC would receive no true consideration nor actual benefit for entering into the loan transaction.

68. In furtherance of the fraudulent loan scheme, on or about February 27, 2007, Suhr, Hahm, GT, Dalalo, and others, purportedly in their respective capacities as officers and/or directors of SPPC, and on behalf of SPPC, and Soh and Yoongki, entered into a THREE MILLION DOLLAR ($3,000,000.00) loan scheme. Upon information and belief, the following documents were included as a part of the scheme: (a) February 27, 2007 CB Subscription and Purchase Agreement ("CB Subscription Agreement"); and (b) Convertible Bonds, Certificates Nos. 1-1, 1-2, and 1-3 ("Bonds") (the CB Subscription Agreement and the Bonds collectively referred to herein as the "Transaction Documents"), copies of which are attached hereto as **EXHIBIT 4**. The Transaction Documents were drafted by and on behalf of Soh and Yoongki, who dictated and controlled the content of each of the documents.

69. The Transaction Documents provided that the principal amount of $3 Million shall bear interest at the rate of five percent (5%) per annum until paid in full.

70. The Transaction Documents provided that payments of principal "will be made only against presentation and surrender of the Bonds at the specified office of the Company . . .."

71. The Transaction Documents provided that the Bondholders "will not be entitled to any payment of principal for any delay after the due date . . . if the Bondholder is late in surrendering its Bonds . . .."

72. The Transaction Documents provided that all principal and interest on the Bonds were due and payable on March 1, 2010 (the "Maturity Date").

73. The Transaction Documents provided that in the event of non-payment in accordance with the conditions above, SPPC was required to pay default interest at a rate of thirty percent (30%) per annum on any unpaid principal and interest.

74. The Transaction Documents fraudulently misrepresented that its execution and delivery of the Bonds will not conflict with, constitute a default under, or give rise to any right to termination or otherwise under any agreement or mortgage to which SPPC is a party.

75. On or about February 27, 2007, and February 28, 2007, Suhr, in spite of his numerous conflicts of interest and intentional disregard of his fiduciary duties to SPPC, and with full knowledge that the proceeds of the loan transaction were being paid directly to and for the sole benefit of MBG and/or Paradise LP, executed the CB Subscription Agreement and issued the Bonds to Soh and Yoongki.

76. At the time Suhr executed the Transaction Documents, Soh, Yoongki and Chang had actual knowledge that Suhr, Hahm and GT were officers and directors of SPPC, and at the same time Suhr and Hahm were also officers, directors and/or owners of MBG, and, upon information and belief, Suhr and Hahm also had interests in Paradise LP.

77. At the time of this fraudulent loan scheme, upon information and belief, WJ was a director, officer, and/or owner of MBG, and a Manager and Member of the General Partner of Paradise LP.

78. WJ directly participated in the scheme to fraudulently procure the purported loan for the sole benefit of MBG and/or Paradise LP through SPPC.

79. At the time of this fraudulent loan scheme, upon information and belief, Soh, Yoongki and Chang knew that the proceeds of the loan transaction were being paid directly to and for the sole benefit of MBG and/or Paradise LP, and that Chang, whether directly or on behalf of Soh and Yoongki, would obtain a partnership interest in Paradise LP through the fraudulent transfer of the proceeds of the loan transaction.

80.     Soh, Yoongki and Chang did not require that MBG, the initial transferee of the loan transaction, directly obtain the loan, nor did they require that MBG or the owners of MBG provide their respective personal guarantees as security for the 3 MILLION DOLLAR LOAN.

81.     Upon information and belief, Soh, Yoongki and Chang determined not to comply with the rigorous governmental requirements in making a direct investment of Three Million Dollars ($3,000,000.00) in Paradise LP, and instead directly participated in the fraudulent loan transaction for the 3 MILLION DOLLAR LOAN to fraudulently procure both a borrower position and a limited partnership interest in Paradise LP using the same proceeds.

82.     Following the execution of the Transaction Documents, on March 1, 2007, SPPC received a wire transfer of $3,000,000 from Soh and Yoongki.

83.     On or about March 6, 2007, Suhr, Hahm, GT, Dalalo, and others, purportedly in their respective capacities as officers and/or directors of SPPC, caused the wire transfer of $2,500,000 directly to MBG.

84.     On or about March 15, 2007, Suhr, Hahm, GT, Dalalo, and others, purportedly in their respective capacities as officers and/or directors of SPPC, caused the wire transfer of the balance of the loan proceeds, or $500,000, directly to MBG.

85.     Upon information and belief, the aggregate amount of Three Million Dollars ($3,000,000.00) was originally intended to be transferred by MBG to Paradise LP on behalf of Soh, Yoongki, and Chang, and was subsequently transferred by MBG to Paradise LP, on behalf of Soh, Yoongki, and Chang.

86.     In furtherance of the fraudulent loan scheme, on or about March 10, 2010, then-SPPC Comptroller and Secretary, Defendant Dalalo, with the participation of and direction and instruction by, Suhr, Hahm, GT, and others, communicated through electronic means with SPPC shareholder Seung Hee Hahn with respect to the foregoing wire transfers, and specifically concealed the nature of the transactions: "SPPC's bank account was used to facilitate the transfer of $3,000,000 to MB Guam Inc. Thus, these transfers were not recorded on SPPC's book." See email correspondence dated March 24, 2010 and June 8, 2010, attached hereto as **EXHIBIT 5**.

87.     In furtherance of the fraudulent loan scheme, and in continued efforts to conceal the transactions from SPPC, not one notice or demand was transmitted to SPPC, nor was there any communication whatsoever, by Soh ,Yoongki, or Chang, to SPPC, with respect to the payment of the debt purportedly reflected in or represented by the Transaction Documents. Furthermore, Soh, Yoongki and Chang have never made a presentation or surrender of the Bonds to SPPC, as required by the terms of the Transaction Documents.

88.     There was no true consideration or actual benefit whatsoever received by SPPC for the purported loan transaction.

89.     Soh, Yoongki and Chang each had actual or constructive knowledge, and/or knew or should have known that SPPC was to receive no true consideration or actual benefit whatsoever for the purported loan transaction.

90.     Soh, Yoongki and Chang each had actual or constructive knowledge, and/or knew or should have known that the business of SPPC was the operation of a petroleum company and related enterprises and that neither MBG nor Paradise LP had any legitimate assets or business to justify its receipt of the loan proceeds.

91.     Soh, Yoongki and Chang each had actual or constructive knowledge, and/or knew or should have known that MBG and Paradise LP were not affiliates of SPPC, that MBG was not a subsidiary of SPPC, that MBG and Paradise LP were both entities entirely separate and apart from SPPC, and that neither had any actual relationship whatsoever with SPPC.

92.     At the time of the execution of the purported Transaction Documents, Suhr, Hahm, GT, Dalalo and WJ and others, in association with Soh, Yoongki and Chang had actual or constructive knowledge, and/or knew or should have known the following: (a) that SPPC lacked the capacity to satisfy the purported loan transaction; (b) that enforcement of the purported Transaction Documents threatened the very existence of SPPC; (c) that the purported Transaction Documents had not been disclosed to the SPPC shareholders; (d) that the SPPC shareholders did not consent to the purported loan transaction; (e) that the SPPC shareholders did not waive their preemptive shareholder rights as required to implement the terms of the Transaction Documents

with respect to the conversion rights; (f) that SPPC had not received advice from any attorney as to the propriety of the purported Transaction Documents; (g) that SPPC was prohibited by the terms of the Outstanding Loan from making any loan without the lender's prior consent, and that the purported Transaction Documents would place SPPC in default thereunder; (h) that the purported Transaction Documents was directly against the interests of SPPC; (i) that Suhr, Hahm, GT, Dalalo and others owed fiduciary duties to SPPC and that binding SPPC to the purported Transaction Documents constituted a breach of their fiduciary duties to SPPC; (j) that the acts of Suhr, Hahm, GT, Dalalo and others to attempt to bind SPPC to the Transaction Documents constituted grave conflicts of interest, and abuses of their respective representative capacity authority; and (k) that the purported Transaction Documents had been concealed from SPPC, its attorneys, employees, auditors, shareholders and others.

93.     In furtherance of their fraudulent loan scheme, Suhr, Hahm, GT, Dalalo and WJ, and others, in association with and with the active participation of Soh, Yoongki, and Chang, concealed the Transaction Documents from SPPC, its attorneys, employees, auditors, shareholders and others.

**ADDITIONAL ELEMENTS OF THE FRAUDULENT LOAN SCHEME**

94.     In furtherance of the fraudulent loan scheme, the purported loan transaction was concealed from SPPC, its attorneys, employees, auditors, shareholders and others who would have prevented the scheme had the facts of the scheme not been concealed from them.

95.     Suhr and upon information and belief, others who served in purported representative capacities at SPPC, misrepresented material facts regarding the purported loan transaction and otherwise deceived other SPPC fiduciaries, in furtherance of the scheme to fraudulently procure the purported SPPC loan transaction for the sole benefit of and use by MBG and/or Paradise LP.

96. SPPC representatives lacked authority to bind SPPC to the purported loan transaction and Soh, Yoongki and Chang had actual or constructive knowledge and/or knew or should have known this fact.

97. The SPPC representatives abused their purported representative authority in their attempts to bind SPPC to the purported loan transaction and Soh, Yoongki and Chang had actual or constructive knowledge and/or knew or should have known this fact.

98. The SPPC representatives engaged in self-dealing in their attempts to bind SPPC to the purported loan transaction and Soh, Yoongki and Chang had actual or constructive knowledge and/or knew or should have known this fact.

99. The SPPC representatives had actual conflicts of interest which prohibited them from attempting to bind SPPC to the purported loan transaction and Soh, Yoongki and Chang had actual or constructive knowledge and/or knew or should have known this fact.

100. The SPPC representatives breached their respective fiduciary duties in their attempts to bind SPPC to the purported loan transaction and Soh, Yoongki and Chang had actual or constructive knowledge and/or knew or should have known this fact.

101. Soh, Yoongki and Chang, MBG, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ and others each participated in the fraudulent loan scheme, and the conduct and knowledge of each of them individually, is imputed to the others collectively.

102. In furtherance of the fraudulent loan scheme, on or about February 26, 2015, without any prior notice, demand or communication with SPPC, and without any presentation and surrender of the Bonds to SPPC, almost five (5) years after the Maturity Date, Soh and Yoongki filed an action in Seoul Central District Court, South Korea, seeking the enforcement of the Transaction Documents (the "South Korea Lawsuit").

103. On or about August 20, 2015, SPPC was served with the documents related to the South Korea Lawsuit, providing the first and only notice SPPC received concerning the Transaction Documents, the debt purportedly reflected and represented therein, and the fraudulent actions committed by Suhr, Hahm, GT, Dalalo, WJ, MBG, Paradise LP and others, in association

with and with the active participation of Soh, Yoongki, and Chang, to conceal the Transaction

Documents from SPPC, its attorneys, employees, auditors, shareholders and others.

104.  In furtherance of the fraudulent loan scheme, Soh, Yoongki, Chang, Suhr, Hahm,

GT, Dalalo, WJ, MBG, Paradise LP and others, have at all relevant times herein had actual or

constructive knowledge, and/or knew or should have known that SPPC would be incapable of

performing under the purported loan without resulting in financial ruin to SPPC.

105.  Upon information and belief, in perpetrating the fraudulent loan scheme, Soh,

Yoongki, Chang, Suhr, Hahm, GT, Dalalo, WJ, MBG, Paradise LP and others, attempted to

commit and committed various acts of mail fraud as that term is defined in 18 U.S.C. Chapter 63

including but not limited to the following: devising a scheme or artifice to defraud SPPC, to

fraudulently and wrongfully procure the loan transaction from SPPC, to misappropriate SPPC's

assets, and/or to obtain money or property from SPPC, through the fraudulent loan scheme, by

false or fraudulent pretenses, using the mail, wire, telephone, facsimile, internet, e mails and

letters, in interstate and foreign commerce, between Guam, Korea, the United States and

elsewhere.

106.  In furtherance of fraudulent loan scheme, Soh, Yoongki and Chang did not make

one timely demand on SPPC, nor did they make a presentation and surrender of the Bonds for the

payment of the debt purportedly reflected and represented in the Transaction Documents, and

instead waited in silence to file an action in South Korea to enforce the fraudulently and

wrongfully procured loan transaction.

**FIRST COUNT: THE TRANSACTION DOCUMENTS ARE VOID AND/OR**
**UNENFORCEABLE BECAUSE SOH, YOONGKI AND CHANG FAILED TO COMPLY**
**WITH GUAM BUSINESS LICENSE LAWS**

107.  SPPC realleges the allegations contained in paragraphs 1 through 106 as if fully

stated herein.

108.  Under Guam Business License laws it is the policy of the Government of Guam

that all businesses have licenses. 11 G.C.A. § 70130 provides in pertinent part, "It is the policy of

the government of Guam that all persons engaging in, transacting, conducting, continuing, doing,

or carrying on a business have business licenses. Unless otherwise specifically exempted by law, no person shall engage in, transact, conduct, continue, do, or carry on a business in Guam until it obtains a business license."

109.    Upon information and belief, at all relevant times herein, Soh, Yoongki and Chang were each subject to Guam business license laws but transacted business without first complying with Guam business license laws.

110.    11 G.C.A. § 70119 provides in pertinent part, "Any person who is required by the terms of this Division to obtain a license or licenses, and endorsements applicable thereto, and who refuses or fails to obtain such license or licenses, and endorsements, shall be guilty of a misdemeanor.

111.    Upon information and belief, at all relevant times herein, Soh, Yoongki and Chang were each required to obtain a business license or licenses but failed to do so rendering each of their respective acts of conducting business in Guam, illegal, and their execution and enforcement of the Transaction Documents, illegal.

112.    Any and all transactions relating to the fraudulent loan scheme under which Soh and Yoongki assert SPPC is liable are illegal, void, and/or unenforceable.

113.    The Court should issue a declaratory judgment that the Transaction Documents are illegal, void, and/or unenforceable, and, issue injunctive relief consistent therewith.

**SECOND COUNT: THE TRANSACTION DOCUMENTS ARE VOID AND/OR UNENFORCEABLE WITH RESPECT TO YOONGKI BECAUSE IT FAILED TO REGISTER AS A FOREIGN CORPORATION**

114.    SPPC realleges the allegations contained in paragraphs 1 through 113 as if fully stated herein.

115.    Under Guam foreign corporation laws, a foreign corporation shall not transact business in Guam until it obtains both a business license and a certificate of authority to do so from the Director of the Department of Revenue and Taxation.

116.    Upon information and belief, at all relevant times herein, Yoongki was a foreign corporation transacting business in Guam which had not obtained business licenses or certificates of authority from the Department of Revenue and Taxation.

117.    Upon information and belief, at all relevant times herein, Yoongki was required to but failed to obtain business licenses and certificates of authority to conduct business in Guam as a foreign corporation.

118.    Any and all transactions relating to the fraudulent loan scheme under which Yoongki and others assert SPPC is liable are illegal, void, and/or unenforceable.

119.    The Court should issue a declaratory judgment that the Transaction Documents are illegal, void, and/or unenforceable, and, issue injunctive relief consistent therewith.

## THIRD COUNT: STATUTE OF LIMITATIONS

120.    SPPC realleges the allegations contained in paragraphs 1 through 119 as if fully stated herein.

121.    As alleged herein, the Transaction Documents were purportedly executed on or about February 27 and February 28, 2007, and required the payment of the entire principal and interest due under the purported loan transaction no later than the Maturity Date, or March 1, 2010, upon the presentation and surrender of the Bonds.

122.    The commencement of an action upon any contract, obligation or liability founded upon an instrument in writing must be filed within four (4) years. See 7 G.C.A. § 11303.

123.    Soh, Yoongki and Chang were required to file an action to enforce the Transaction Documents within four years following the Maturity Date, and failed to do so.

124.    The Court should issue a declaratory judgment that the Transaction Documents are invalid and/or unenforceable, and, issue injunctive relief consistent therewith.

## FOURTH COUNT: LACK OF CONSIDERATION

125.    SPPC realleges the allegations contained in paragraphs 1 through 124 as if fully stated herein.

1    126.    SPPC received no true consideration or actual benefit to support the purported loan

2    transaction. Any statements or implications contained in the Transaction Documents that the loan

3    proceeds were to be used by or for the benefit of SPPC or are otherwise supported by

4    consideration are false and fraudulent. Because the Transaction Documents are not supported by

5    consideration to SPPC, the Transaction Documents are void and/or unenforceable under Guam

6    law.

7    127.    The Court should issue a declaratory judgment that the Transaction Documents are

8    illegal, void, and/or unenforceable, and, issue injunctive relief consistent therewith.

9

10   **FIFTH COUNT: PROCEDURAL AND SUBSTANTIVE UNCONSCIONABILITY**

11   128.    SPPC realleges the allegations contained in paragraphs 1 through 127 as if fully

12   stated herein.

13   129.    The procedures by which the purported loan transaction was procured were

14   unconscionable, based upon *inter alia* fraud, false pretenses, breaches of fiduciary duties, self

15   dealing, abuses of representative authority, commercially unreasonable conduct, material

16   misrepresentations, concealment, and, outrageous, extreme, illegal, willful, oppressive, and

17   malicious conduct.

18   130.    Additionally and/or alternatively, the terms of the purported loan transaction are

19   unconscionable because *inter alia* SPPC received no true consideration or actual benefit for the

20   purported loan transaction yet was subjected to extreme financial risk and ruin, exposed to

21   unreasonable liability and insolvency; commercially unreasonable, fraudulent, and false terms;

22   false and fraudulent pretenses; commercially unreasonable repayment terms; and, commercially

23   unreasonable interest terms. Additionally, the Transaction Documents constitute agreements that

24   no promisor with any sense, and not under a delusion, would make, and that no honest and fair

25   promisee would accept.

26

27

28

131. The Court should issue a declaratory judgment that the loan transaction is procedurally and/or substantively unconscionable, illegal, void, and/or unenforceable, and, issue injunctive relief consistent therewith.

## SIXTH COUNT: LACK OF CONSENT AND WAIVER OF PREEMPTIVE RIGHTS

132. SPPC realleges the allegations contained in paragraphs 1 through 131 as if fully stated herein.

133. The transactions reflected in the Transaction Documents required the consent of the Board of Directors of SPPC, the consent of the Shareholders of SPPC, and a waiver of existing preemptive rights of the Shareholders of SPPC with respect to the conversion rights set forth therein.

134. The conversion rights in the Transaction Documents are material to the entire purported transaction reflected in the Transaction Documents.

135. The Shareholders of SPPC had and continue to have existing preemptive shareholder rights with respect to the issuance of shares in SPPC.

136. Upon information and belief, the Transaction Documents were executed without compliance with statutory and corporate formalities, including, but not limited to, the procurement of the consent of the Board of Directors and the consent of the Shareholders of SPPC.

137. Upon information and belief, the Transaction Documents were executed without a waiver by the Shareholders of SPPC of its existing preemptive rights.

138. The Court should issue a declaratory judgment that the loan transaction is ultra vires, void, canceled, and/or unenforceable, and, issue injunctive relief consistent therewith.

## SEVENTH COUNT: LACK OF PRESENTMENT AND SURRENDER

139. SPPC realleges the allegations contained in paragraphs 1 through 138 as if fully stated herein.

140. The Transaction Documents provided that an Event of Default occurs when a default is made for more than fourteen (14) days in the payment of principal or interest "when and as the same ought to be paid in accordance with these Conditions . . .." See Convertible Bonds, Schedule 2, Terms and Conditions, at ¶9.

141. As an express condition to payment, the Transaction Documents provided that payments of principal "will be made only against presentation and surrender of the Bonds at the specified office of the Company . . .." See Convertible Bonds, Schedule 2, Terms and Conditions, at ¶6 (A) (emphasis added).

142. The Transaction Documents further provided that the Bondholders "will not be entitled to any payment of principal for any delay after the due date . . . if the Bondholder is late in surrendering its Bonds . . .." See Convertible Bonds, Schedule 2, Terms and Conditions, at ¶6 (E).

143. Soh, Yoongki and Chang did not, and to date have not, made any presentation or surrender of the Bonds to SPPC.

144. Pursuant to the express terms of the Transaction Documents, Soh, Yoongki and Chang are not entitled to the payment of any alleged principal without a presentation and surrender of the Bonds, which to date has not occurred.

145. Pursuant to the express terms of the Transaction Documents, Soh, Yoongki and Chang have delayed in the presentation and surrender of the Bonds for more than five (5) years, and counting, and are not entitled to any payment as a result of such delay, whether such delay is intentional or otherwise.

146. Pursuant to the express terms of the Transaction Documents, there is no default under the Transaction Documents by SPPC with respect to the payment of principal until Soh, Yoongki and Chang present and surrender the Bonds, and the applicable time period passes without payment, subject to such other defenses SPPC may have with respect to such payment.

147. The Court should issue a declaratory judgment that pursuant to the express terms of the Transaction Documents, the presentation and surrender of the Bonds are a condition

precedent necessary and required for the payment of principal under the Bonds; and that due to the lack of such presentation and surrender, to date, there is no event of default by SPPC with respect to the payment of principal under the Bonds.

## EIGHTH COUNT: FRAUD

148. SPPC realleges the allegations contained in paragraphs 1 through 147 as if fully stated herein.

149. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo, Choi, Lee, Shin and WJ, DOES 1-100, and others, individually and collectively, directly, and/or through their respective agents, caused to be drafted and executed the Transaction Documents for the purported loan of $3,000,000.00 to SPPC, contain materially false representations, and with the full knowledge that the loan proceeds would be paid to MBG and/or Paradise LP for their sole benefit and use.

150. The Transaction Documents were, as has been alleged, made under false and fraudulent pretenses; were the product of fraudulent concealment and the fraudulent misrepresentation of material facts; were committed using fraudulent and false corporate actions; and, are part of the fraudulent loan scheme.

151. The procedural circumstances, as has been alleged, and the substantive content of the Transaction Documents, were reasonably calculated to deceive, to make it appear as though SPPC was the recipient of the loan proceeds, and had agreed to, executed, approved, ratified, and authorized the execution of the Loan Transactions, to bind SPPC.

152. The Transaction Documents contain materially false representations.

153. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo, Choi, Lee, Shin and WJ, DOES 1-100, and others, individually and collectively, directly, and/or through their respective agents, intended to deceive SPPC and others as alleged.

154. Based upon the procedural and substantive fraud, Soh and Yoongki have individually and collectively fraudulently sought, through the Korea Lawsuit, to enforce the

Case 1:15-cv-00042   Document 1   Filed 11/09/15   Page 26 of 40

Transaction Documents against SPPC, demanding from SPPC payment in excess of $3,000,000.00.

155. By their procedural and substantive fraud, Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo, Choi, Lee, Shin and WJ, DOES 1-100, and others, individually and collectively, directly, and/or through their respective agents, perpetrated fraud against SPPC, causing SPPC to be exposed to liability in excess of $3,000,000.00, in addition to other damages suffered by SPPC.

156. The misconduct of Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo, Choi, Lee, Shin and WJ, DOES 1-100, and others, individually and collectively, directly, and/or through their respective agents was malicious, fraudulent, oppressive, and intended to injure SPPC, entitling SPPC to punitive damages.

## NINTH COUNT: CONSPIRACY TO COMMIT FRAUD

157. SPPC realleges the allegations contained in paragraphs 1 through 156 as if fully stated herein.

158. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo, Choi, Lee, Shin and WJ, DOES 1-100, and others, individually and collectively, directly, and/or through their respective agents, agreed to and acted in concert with each other or pursuant to a common design, to fraudulently and wrongfully procure the loan transaction from SPPC, to misappropriate SPPC's assets, to obtain money or property from SPPC; to defraud SPPC of its assets, in excess of $3,000,000.00, through the materially false Transaction Documents, and the procedural and substantive fraud committed, as alleged, which purport to bind SPPC.

159. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo, Choi, Lee, Shin and WJ, DOES 1-100, and others, individually and collectively, directly, and/or through their respective agents, knew that the other's conduct constituted a fraud , and gave substantial assistance or encouragement to the other to perpetrate the fraud.

**TENTH COUNT: BREACH OF FIDUCIARY DUTY (SUHR)**

160. SPPC realleges the allegations contained in paragraphs 1 through 159 as if fully stated herein.

161. At all relevant times herein Suhr was an officer and director of SPPC.

162. Throughout the commission of the fraudulent loan scheme, Suhr owed fiduciary duties to SPPC and to its shareholders.

163. As an officer and director of SPPC, Suhr owed fiduciary duties to SPPC and to its shareholders, including *inter alia*, undivided loyalty, due care, good faith, candor, and fair dealing, and restraint from abuse of his position at SPPC and from self-dealing.

164. Suhr breached his fiduciary duties to SPPC and its shareholders as has been alleged, and by wrongfully attempting to bind SPPC to the Transaction Documents.

165. The fraudulent loan scheme benefitted Suhr personally, unjustly enriched Suhr, and harmed SPPC and its shareholders.

166. Suhr is liable to SPPC in amounts subject to proof at trial.

**ELEVENTH COUNT: BREACH OF FIDUCIARY DUTY (HAHM)**

167. SPPC realleges the allegations contained in paragraphs 1 through 166 as if fully stated herein.

168. At all relevant times herein Michael S. Hahm was an officer and director of SPPC.

169. Throughout the commission of the fraudulent loan scheme Hahm owed fiduciary duties to SPPC and to its shareholders.

170. As an officer and director of SPPC, Hahm owed fiduciary duties to SPPC and to its shareholders, including *inter alia*, undivided loyalty, due care, good faith, candor, and fair dealing, and restraint from abuse of his position at SPPC and from self-dealing.

171. Hahm breached his fiduciary duties to SPPC and its shareholders as has been alleged, and by wrongfully attempting to bind SPPC to the Transaction Documents.

172. The fraudulent loan scheme benefitted Hahm personally, unjustly enriched Hahm, and harmed SPPC and its shareholders.

1    173.    Hahm is liable to SPPC in amounts subject to proof at trial.

2

3        **TWELTH COUNT: BREACH OF FIDUCIARY DUTY: (GT KIM)**

4    174.    SPPC realleges the allegations contained in paragraphs 1 through 173 as if fully

5 stated herein.

6    175.    At all relevant times herein GT was an officer and/or director of SPPC.

7    176.    Throughout the commission of the fraudulent loan scheme, GT owed fiduciary

8 duties to SPPC and to its shareholders.

9    177.    As an officer and director of SPPC, GT owed fiduciary duties to SPPC and to its

10 shareholders, including *inter alia*, undivided loyalty, due care, good faith, candor, and fair

11 dealing, and restraint from abuse of his position at SPPC and from self-dealing.

12    178.    GT breached his fiduciary duties to SPPC and its shareholders as has been alleged,

13 and by wrongfully attempting to bind SPPC to the Transaction Documents.

14    179.    The fraudulent loan scheme benefitted GT personally, unjustly enriched GT, and

15 harmed SPPC and its shareholders.

16    180.    GT is liable to SPPC in amounts subject to proof at trial.

17

18        **THIRTEENTH COUNT: BREACH OF FIDUCIARY DUTY: (DALALO)**

19    181.    SPPC realleges the allegations contained in paragraphs 1 through 180 as if fully

20 stated herein.

21    182.    At all relevant times herein Dalalo was the Comptroller and Secretary of SPPC.

22    183.    Throughout the commission of the fraudulent loan scheme, Dalalo owed fiduciary

23 duties to SPPC and to its shareholders.

24    184.    As the Comptroller and Secretary of SPPC, Dalalo owed fiduciary duties to SPPC

25 and to its shareholders, including *inter alia*, undivided loyalty, due care, good faith, candor, and

26 fair dealing, and restraint from abuse of his position at SPPC and from self-dealing.

27

28

185. Dalalo breached his fiduciary duties to SPPC and its shareholders as has been alleged, and by wrongfully attempting to bind SPPC to the Transaction Documents.

186. The fraudulent loan scheme benefitted Dalalo personally, unjustly enriched Dalalo, and harmed SPPC and its shareholders.

187. Dalalo is liable to SPPC in amounts subject to proof at trial.

**FOURTEENTH COUNT: BREACH OF FIDUCIARY DUTY: (DOES 1-100)**

188. SPPC realleges the allegations contained in paragraphs 1 through 187 as if fully stated herein.

189. At all relevant times herein DOES 1-100 were officers, directors, or other persons or entities standing in a fiduciary relationship with SPPC.

190. Throughout the commission of the fraudulent loan scheme, DOES 1-100 owed fiduciary duties to SPPC and to its shareholders.

191. As officers, directors and/or fiduciaries of SPPC, DOES 1-100 owed fiduciary duties to SPPC and to its shareholders, including *inter alia*, undivided loyalty, due care, good faith, candor, fair dealing, and restraint from abuse of his position at SPPC and from self-dealing.

192. DOES 1-100 breached their fiduciary duties to SPPC and its shareholders as has been alleged, and by wrongfully attempting to bind SPPC to Transaction Documents.

193. The fraudulent loan scheme benefitted DOES 1-100 personally, unjustly enriched DOES 1-100, and harmed SPPC and its shareholders.

194. DOES 1-100 are liable to SPPC in amounts subject to proof at trial.

**FIFTEENTH COUNT: PARTICIPATION IN OR AIDING AND ABETTING THE BREACH OF A FIDUCIARY DUTY**

195. SPPC realleges the allegations contained in paragraphs 1 through 194 as if fully stated herein.

196. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 each had knowledge that Suhr, Hahm, GT, Dalalo and DOES 1-100 owed fiduciary duties to SPPC and its shareholders.

197. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 each entered into a conspiracy pursuant to which Suhr, Hahm, GT, Dalalo and DOES 1-100 unlawfully and in bad faith agreed to breach their fiduciary duties in an attempt to bind SPPC to the Transaction Documents.

198. Additionally and/or alternatively, Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 each agreed to cause SPPC to be bound to the Transaction Documents, using Suhr, Hahm, GT, Dalalo and DOES 1-100's breaches of their fiduciary duties as their unlawful means.

199. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 acted in concert with each other or pursuant to a common design.

200. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 gave substantial assistance or encouragement to Suhr, Hahm, GT, Dalalo and DOES 1-100 to breach their respective fiduciary duties to SPPC and its shareholders.

201. The Transaction Documents benefitted personally and unjustly enriched Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100, and harmed SPPC and its shareholders.

202. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 are liable to SPPC in amounts subject to proof at trial.

### SIXTEENTH COUNT: RICO [18 U.S.C. § 1962(a)]

203. SPPC realleges the allegations contained in paragraphs 1 through 202 as if fully stated herein.

204. SPPC is a person within the meaning of that term in 18 U.S.C. § 1961(3).

1      205.    Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and

2 DOES 1-100 are persons within the meaning of that term in 18 U.S.C. § 1961(3).

3      206.    Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and

4 DOES 1-100 collectively constituted an enterprise within the meaning of that term in 18 U.S.C. §

5 1961(4), and each of them individually was associated with the enterprise, which was engaged in,

6 or the activities of which affected, interstate or foreign commerce.

7      207.    In violation of 18 U.S.C. § 1962(a), Soh, Yoongki, Chang, MGB, Paradise LP,

8 Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 used income received and derived, directly

9 and indirectly, from a pattern of racketeering activity as that term is defined in 18 U.S.C. §

10 1961(5), or through the collection of an unlawful debt, as principals, to use or invest, directly or

11 indirectly, any part of such income, or the proceeds of such income, in acquisition of an interest

12 in or the establishment of or operation of an enterprise engaged in, or the activities of which,

13 affect interstate or foreign commerce, involving multiple predicate acts of fraud in violation of 18

14 U.S.C. Chapter 63, including but not limited to the following: devising a scheme or artifice to

15 defraud SPPC, to fraudulently and wrongfully procure the loan directly from SPPC, to

16 misappropriate SPPC's assets, and/or to obtain money or property from SPPC, through the

17 fraudulent loan scheme, by false or fraudulent pretenses, using the mail, wire, telephone,

18 facsimile, internet, e mails and letters, in interstate and foreign commerce, between Guam, Korea,

19 the United States and elsewhere.

20      208.    SPPC has been injured in its business and property by reason of Soh, Yoongki,

21 Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100's violations of 18

22 U.S.C. § 1962(a).

23      209.    As a direct and proximate result of Soh, Yoongki, Chang, MGB, Paradise LP,

24 Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100's violations of 18 U.S.C. § 1962(a), SPPC has

25 been injured in its business and property and has suffered damages in amounts subject to proof at

26 trial.

27

28

1    210.    SPPC is entitled to recover attorneys' fees and treble damages pursuant to

2    18 U.S.C. § 1964(c).

3

4              **SEVENTEENTH COUNT: RICO [18 U.S.C. § 1964(b)]**

5    211.    SPPC realleges the allegations contained in paragraphs 1 through 210 as if fully

6    stated herein.

7    212.    In violation of 18 U.S.C. § 1962(b), Soh, Yoongki, Chang, MGB, Paradise LP,

8    Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 through a pattern of racketeering activity as

9    that term is defined in 18 U.S.C. § 1961(5), or through the collection of an unlawful debt,

10   involving multiple predicate acts of fraud in violation of 18 U.S.C. Chapter 63, acquired or

11   maintained, directly or indirectly, an interest in or control of an enterprise as that term is defined

12   in 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate or foreign

13   commerce.  Such fraudulent acts include but are not limited to the following: devising a scheme

14   or artifice to defraud SPPC, to fraudulently and wrongfully procure the loan from SPPC, to

15   misappropriate SPPC's assets, and/or to obtain money or property from SPPC, through the

16   fraudulent loan scheme, by false or fraudulent pretenses, using the mail, wire, telephone,

17   facsimile, internet, e mails and letters, in interstate and foreign commerce, between Guam, Korea,

18   the United States and elsewhere.

19   213.    SPPC has been injured in its business and property by reason of Soh, Yoongki,

20   Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100's violations of

21   18 U.S.C. § 1962(b).

22   214.    As a direct and proximate result of Soh, Yoongki, Chang, MGB, Paradise LP,

23   Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100's violations of 18 U.S.C. § 1962(b), SPPC has

24   been injured in its business and property and has suffered damages in amounts subject to proof at

25   trial.

26   215.    SPPC is entitled to recover attorneys' fees and treble damages pursuant to 18

27   U.S.C. § 1964(c).

28

## EIGHTTEENTH COUNT: RICO [18 U.S.C. 1964(c)]

216.    SPPC realleges the allegations contained in paragraphs 1 through 215 as if fully stated herein.

217.    Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 were employed by or associated with the enterprise and, in violation of 18 U.S.C. § 1962(c), conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), involving multiple predicate acts of fraud in violation of 18 U.S.C. Chapter 63, including but not limited to the following: devising a scheme or artifice to defraud SPPC, to fraudulently and wrongfully procure the loan from SPPC, to misappropriate SPPC's assets, and/or to obtain money or property from SPPC, through the fraudulent loan scheme, by false or fraudulent pretenses, using the mail, wire, telephone, facsimile, internet, e mails and letters, in interstate and foreign commerce, between Guam, Korea, the United States and elsewhere.

218.    SPPC has been injured in its business and property by reason of Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100's violations of 18 U.S.C. § 1962(c).

219.    As a direct and proximate result of Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100's violations of 18 U.S.C. § 1962(c), SPPC has been injured in its business and property and has suffered damages in amounts subject to proof at trial.

220.    SPPC is entitled to recover attorneys' fees and treble damages pursuant to 18 U.S.C. §1964(c).

## NINETEENTH COUNT: RICO [18 U.S.C. 1962(d)]

221.    SPPC realleges the allegations contained in paragraphs 1 through 220 as if fully stated herein.

222. In violation of 18 U.S.C. § 1962(d), Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 conspired to violate the provisions of 18 U.S.C. § 1962(a), (b), and (c).

223. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 knowingly agreed and conspired together to aid, abet, participate in, or commit breaches of fiduciary duty and defraud SPPC, and to commit or assist in the commission of at least two predicate acts with the knowledge and intent that such acts were in furtherance of the scheme to defraud, including but not limited to the following: devising a scheme or artifice to defraud SPPC, to fraudulently and wrongfully procure the loan from SPPC, to misappropriate SPPC's assets, and/or to obtain money or property from SPPC, through the fraudulent loan scheme, by false or fraudulent pretenses, using the mail, wire, telephone, facsimile, internet, e mails and letters, in interstate and foreign commerce, between Guam, South Korea, the United States and elsewhere.

224. SPPC has been injured in its business and property by reason of Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100's violations of 18 U.S.C. § 1962(d).

225. As a direct and proximate result of Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100's violations of 18 U.S.C. § 1962(d), SPPC has been injured in its business and property and has suffered damages in amounts subject to proof at trial.

226. SPPC is entitled to recover attorneys' fees and treble damages pursuant to 18 U.S.C. § 1964(c).

## TWENTIETH COUNT: CIVIL CONSPIRACY

227. SPPC realleges the allegations contained in paragraphs 1 through 226 and 232 through *220* as if fully stated herein.

Case 1:15-cv-00042   Document 1   Filed 11/09/15   Page 35 of 40

228. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 knowingly agreed and conspired together to aid, abet, participate in, or commit breaches of fiduciary duty and to defraud SPPC, through a series of fraudulent loan schemes, in furtherance of the scheme to defraud.

229. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 are jointly and severally liable for the tortuous and unlawful acts, including not only the acts of those who committed the acts themselves, but also those who planned, furthered by cooperation, lent aid to, or encouraged the acts.

230. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 are jointly and severally liable for all damages resulting from the acts in amounts subject to proof.

231. SPPC is entitled to recovery punitive and exemplary damages from Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 for their willful, malicious, fraudulent, and oppressive acts.

## TWENTY-FIRST COUNT: ILLEGALITY

232. SPPC realleges the allegations contained in paragraphs 1 through 231 as if fully stated herein.

233. As alleged, the purported loan transaction is illegal on grounds which include but are not limited to *inter alia*: (a) Soh, Yoongki and Chang have violated Guam laws pertaining to business licenses; (b) Yoongki violated Guam laws pertaining to foreign corporations; (c) Soh, Yoongki and Chang have violated Guam laws pertaining to contracts; (d) Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100 have: (i) perpetrated fraud against SPPC; (ii) have breached or have aided, abetted, or participated in the breach of fiduciary duties against SPPC; and, (iii) have violated civil RICO laws.

234. The purported Transaction Documents constitute illegal contracts and are void and/or unenforceable.

235. The Court should issue a declaratory judgment that the Transaction Documents are illegal, void, and/or unenforceable, and, issue injunctive relief consistent therewith.

**TWENTY-SECOND COUNT: TORTIOUS INTERFERENCE WITH CONTRACT**

236. SPPC realleges the allegations contained in paragraphs 1 through 235 as if fully stated herein.

237. Pursuant to its Outstanding Loan SPPC had a valid contract with Hanmi Bank. Pursuant to the Outstanding Loan, SPPC was bound by loan covenants, including a covenant that SPPC refrain from assuming any further indebtedness or liability.

238. Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100, and others had actual or constructive knowledge and/or knew or should have known of the existence of the Outstanding Loan, including its terms and covenants.

239. In perpetrating the fraudulent loan scheme, including specifically attempting to bind SPPC to the Transaction Documents, Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100, and others, disrupted, interfered with, and/or caused a breach of the Outstanding Loan, by causing SPPC to breach the covenant that it refrain from assuming any further indebtedness or liability.

240. As a result of the tortious interference with contract as above alleged, SPPC has incurred damages in amounts subject to proof at trial.

**TWENTY-THIRD COUNT: THE PURPORTED LOAN TRANSACTION IS THE RESULT OF ABUSES OF REPRESENTATIVE CAPACITY**

241. SPPC realleges the allegations contained in paragraphs 1 through 240 as if fully stated herein.

242. As alleged, at all relevant times herein, Suhr, Hahm, GT, Dalalo and others purported to act in their representative capacities at SPPC throughout their commission of the fraudulent loan scheme, which was intended to benefit themselves or others to the detriment of SPPC.

243. Soh, Yoongki, Chang, MGB, Paradise LP, WJ, DOES 1-100 and others had actual or constructive knowledge and/or knew or should have known that Suhr, Hahm, GT, Dalalo and others were abusing their purported representative capacities at SPPC in attempting to bind SPPC to the fraudulent loan scheme.

244. Under South Korean law, when there has been an abuse of representative capacity as alleged and occurred here, the loan transaction is null, void, and/or unenforceable.

245. Alternatively, under Guam, federal, and/or applicable law, the abuse of representative capacity constitutes a breach of fiduciary duty by Suhr, Hahm, GT, Dalalo, DOES 1-100, and others.

246. Soh, Yoongki, Chang, MGB, Paradise LP, WJ, DOES 1-100, and others, aided and abetted, and/or participated in the abuse of representative capacity and/or the breaches of fiduciary duties.

247. SPPC is has suffered damages in amounts subject to proof at trial.

248. The conduct of Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100, and others was intentional, malicious, and oppressive entitling SPPC to punitive damages.

249. Additionally and/or alternatively, the Court should declare that the Transaction Documents are null, void, and/or unenforceable, and issue injunctive relief consistent therewith.

## DEMAND FOR JURY TRIAL

SPPC demands a jury trial of all issues triable of right by jury.

## PRAYER

WHEREFORE, SPPC prays for judgment against Soh, Yoongki, Chang, MGB, Paradise LP, Suhr, Hahm, GT, Dalalo and WJ, and DOES 1-100, jointly and severally, as follows:

1. For a declaration that the Transaction Documents are, as to SPPC, null and void, of no effect and unenforceable, and should be set aside.

1     2.       For a permanent injunction prohibiting any further proceedings to enforce the

2 Transaction Documents against SPPC.

3     3.       For an award of general, special, and consequential damages in amounts subject to

4 proof.

5     4.       For an award of punitive damages.

6     5.       For an award of all applicable damages and remedies available under Civil RICO,

7 18 U.S.C. § 1964.

8     6.       For an award of SPPC's attorneys' fees.

9     7.       For an award SPPC's of costs.

10     8.       For pre and post judgment interest.

11     9.       For such other further relief the Court may deem proper.

12 Dated this 6th day of November, 2015.

14                         Respectfully Submitted,

16                 By: _____

17                       **DAVID J. LUJAN, ESQ.**
*Attorneys for Plaintiff*

18                       *South Pacific Petroleum Corporation*

# VERIFICATION

Guam, U.S.A.    )
                         ) ss:

City of Hagatna   )

Joon Hee Hahn, being first duly sworn and deposes under oath, as follows: that he is the duly authorized representative and President of South Pacific Petroleum Corporation, the Plaintiff in the above matter; that he verifies the above Verified Complaint and in so doing states that he has read the same and knows that the contents thereof to be true and correct, and except as to those matters which are therein stated in it on information or belief; and as to those matters, he believes it to be true.

Dated this __6__ day of November, 2015.

Joon Hee Hahn
President
South Pacific Petroleum Corporation

SUBSCRIBED AND SWORN to before me on the day and year first above written by Joon Hee Hahn.

Notary Public

SALAMEA C. CHONG
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: DEC. 01, 2018
645 Route 1 South Marine Corps Drive,
Tamuning, Guam 96913