IN THE DISTRICT COURT OF GUAM

SOUTH PACIFIC PETROLEUM
CORPORATION,

Plaintiff,

vs.

MB GUAM, INC., *et al.*,

Defendants.

)
)
)
)
)
)
)
)
)
)
)

CIVIL CASE NO. 15-00042

**ORDER**
re Motion to Dismiss (ECF 12),
Motion for Reconsideration and for
Leave to Amend Complaint (ECF 22) and
Motions Related Thereto (ECF 54, 61 & 77)

Pending before the court are the following motions: (1) a Motion to Dismiss, filed by defendant Roberto Dalalo ("Dalalo"), ECF No. 12; (2) a Motion for Reconsideration and for Leave to Amend Complaint ("Motion for Reconsideration"), filed by Plaintiff South Pacific Petroleum Corporation ("SPPC"), ECF No. 22; (3) a Motion to Strike August 1, 2016, Declaration of Mark S. Smith (the "Motion to Strike"), filed by defendant Brian Y. Suhr ("Suhr"), ECF No. 54; (4) SPPC's Motion for Leave to File Deposition Transcripts of Woo Jong Kim and Motion for Leave to Amend Complaint (the "Motion for Leave"), ECF No. 61; and (5) Suhr's Motion to Strike Reply to Motion for Leave to File Deposition Transcripts (the "Second Motion to Strike"), ECF No. 77. The court does not believe that a hearing on the matter is necessary.[1] For the reasons set forth below, the court issues the following Order on the above pending motions.

---

[1] Pursuant to Rule 7(i) of this court's Civil Local Rules of Practice,

> Unless otherwise ordered by the Court or where required by statute or the federal rules, all motions shall be decided by the Court without oral argument. A party desiring oral argument shall file a request for oral argument no later than seven (7) days following the last day a reply brief would be due.

CVLR 7(i). The court notes that SPPC requested oral argument with regard to its Motion for Reconsideration and the Motion for Leave, *see* ECF Nos. 23 and 62, however, the court does not believe that oral argument will aid the court in resolving any of the motions.

## PROCEDURAL HISTORY

On November 9, 2015, Plaintiff SPPC filed a Verified Complaint (the "Complaint"), which sought declaratory and injunctive relief, as well as damages for fraud, breach of fiduciary duties, violations of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO") and other related claims. Compl., ECF No. 1. SPPC asserted this court had federal question jurisdiction over the RICO claims[2] and supplemental jurisdiction over the common law and state claims.[3] *Id.* at ¶1.

On December 31, 2015, Suhr filed a Motion to Dismiss (the "Suhr Motion to Dismiss"), along with a memorandum in support. *See* ECF Nos. 5-6. Suhr asserted that the case should be dismissed because (1) SPPC's RICO claims arise out of a 2007 CB Subscription and Purchase Agreement, which is a security bond, and claims related to alleged securities fraud are not cognizable under RICO; (2) SPPC failed to plead fraud with particularity; and (3) SPPC's claims are not plausible. Mem. P.&A. in Supp. Suhr Mot. Dismiss at 6-13, ECF No. 6. On December 31, 2015, Suhr filed a Certificate of Service indicating that a copy of his motion and memorandum were served upon Plaintiff's counsel. *See* Cert. of Serv., ECF No. 7.

On March 3, 2016, Dalalo filed a Motion to Dismiss (the "Dalalo Motion to Dismiss"). *See*

---

[2]  The Complaint states that this court also has federal question jurisdiction over the claims arising under 28 U.S.C. §§ 2201 and 2202. The Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, is a procedural statute that provides a federal remedy for litigants seeking a judicial declaration of rights in cases where jurisdiction is otherwise established; it does not confer federal subject matter jurisdiction. *See Staacke v. United States Sec'y of Labor*, 841 F.2d 278, 280 (9th Cir. 1988); *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983). To entertain an action under the Declaratory Judgment Act, a court must have a separate basis for federal subject matter jurisdiction independent of the Declaratory Judgment Act. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950); *Guaranty Nat'l Ins. Co. v. Gates*, 916 F.2d 508, 511 (9th Cir. 1990).

[3]  The Complaint asserts that pursuant to 28 U.S.C. § 1332 this court also has diversity jurisdiction over this action since it "involves citizens of Guam and citizens or subjects of South Korea and the amount of controversy exceeds $75,000. *Id.* at ¶2. The court notes that "diversity jurisdiction under § 1332 requires complete diversity of citizenship, each of the plaintiffs must be a citizen of a different state than each of the defendants." *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004). Here, the Complaint alleges that plaintiff SPPC is a corporation organized and existing under the laws of Guam, with its principal place of business in Guam. Compl. at ¶7, ECF No. 1. It is further alleged that the first named defendant – MB Guam, Inc. – is a corporation organized and existing under the laws of Guam, with its principal place of business in Guam. *Id.* at ¶8. Thus, the court finds there is a lack of complete diversity in this action.

1  ECF No. 12.  Similar to Suhr's motion, Dalalo raised the following arguments in support of his

2  motion to dismiss: (1) SPPC failed to plead fraud with particularity; (2) failure to state a claim;

3  (3) statute of limitations; (4) SPPC's claims are not plausible; and (5) SPPC's securities claims are

4  not cognizable under RICO.  *Id.* at 5-16.

5       On March 24, 2016, the court granted Suhr's Motion to Dismiss.  *See* Order, ECF No. 17 (the

6  "Dismissal Order").  In said order, the court noted that pursuant to CVLR 7(f), the deadline to file

7  an opposition to the motion was January 21, 2016, however, SPPC had not filed an opposition to

8  date.  *Id.* at 1.  The court weighed the following four factors:

9       (1) the public's interest in expeditious resolution of litigation; (2) the court's need to
        manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy
10      favoring disposition of cases on their merits; and (5) the availability of less drastic
        sanctions.
11

12 *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995).   The Dismissal Order stated that the second and

13 third factors weigh in favor of dismissal.  Dismissal Order at 2, ECF No. 17.  The court also noted

14 that "[t]o dismiss Plaintiff's claims is a harsh measure – but Plaintiff does not oppose a dismissal,

15 nor has Plaintiff filed a motion for an extension of time to file an opposition to the motion to

16 dismiss."  *Id.*

17      On March 25, 2016, SPPC filed an *Ex Parte* Motion to Extend Time to Oppose [Dalalo's]

18 Motion to Dismiss.  *See* ECF No. 19.  Finding good cause and excusable neglect, the court granted

19 the request for extension on March 29, 2016, and ordered SPPC to file and serve its opposition no

20 later than April 4, 2016.  *See* Order, ECF No. 21.

21      SPPC did not file an opposition to Dalalo's motion by the April 4th deadline.  Instead, on

22 April 4, 2016, SPPC filed the Motion for Reconsideration.  *See* ECF No. 22.  A Proposed First

23 Amended Verified Complaint (the "Proposed FAC") was appended to the Motion for

24 Reconsideration.  *See* ECF No. 22-1.  Suhr filed a Memorandum in Opposition (the "Opposition")

25 on April 25, 2016, and SPPC filed a Reply Brief (the "Reply") on May 9, 2016.  *See* ECF Nos. 25

26 and 34.

27      On August 1, 2016, SPPC filed a Declaration of Mark S. Smith in Support of Plaintiff's

28 Motion for Reconsideration and for Leave to Amend Complaint (the "Smith Declaration").  *See* ECF

No. 52. Attached as exhibits to the Smith Declaration were copies of the depositions transcripts of Woo Jong Kim, which comprised of two volumes.[4] *Id.* and Exs. 1-2 thereto.

On August 9, 2016, Suhr filed the Motion to Strike, as well as a memorandum in support of its motion. *See* ECF Nos. 54 and 57. On August 24, 2016, SPPC and Suhr stipulated that SPPC would have until September 6, 2016, to file an opposition to the Motion to Strike, with Suhr to file a reply brief 14 days thereafter. *See* Stip. for Extension, ECF No. 58.

On September 6, 2016, SPPC filed its response to the Suhr's Motion to Strike, *see* ECF No. 60, as well as the Motion for Leave. *See* ECF No. 61. Suhr filed an opposition memorandum on September 26, 2016, and SPPC filed a reply brief (the "Motion for Leave Reply") on October 11, 2016. *See* ECF Nos. 66 and 74. Additionally, on October 11, 2016, SPPC filed a Declaration of Mark S. Smith (the "Second Smith Declaration") with accompanying exhibits[5] in support of its reply brief. *See* ECF No. 75.

On October 25, 2016, Suhr filed the Second Motion to Strike and memorandum in support, therein requesting that the court strike the Second Smith Declaration and portions of SPPC's Motion for Leave Reply. *See* ECF Nos. 77-78. The parties thereafter filed a stipulation agreeing to give SPPC until November 21, 2016, to file an opposition to the Second Motion to Strike, with Suhr to file a reply, if any, 14 days thereafter. *See* ECF No. 85. On November 21, 2016, SPPC filed its opposition. *See* ECF No. 87. Suhr did not file a reply brief.

The motions had been referred to the Magistrate Judge, but on March 3, 2017, the Magistrate Judge recused himself from this action. *See* ECF Nos. 65 and 106.

///

---

[4] The deposition of Woo Jong Kim occurred on July 15-16, 2009, and were taken in connection with the case *MCC Capital, LLC et al. v. Woo Jong Kim, et al.*, Superior Court of California, County of Loc Angeles, Case No. BC387370. *Id.* at ¶¶2-3.

[5] These exhibits consisted of (1) pages 140-144 of Woo Jong Kim's deposition taken on July 16, 2009, as previously filed with the court, (2) an email dated December 27, 2006, from Suhr to Christopher Felix, and (3) a copy of the Certificate from the National Court administration in South Korea with regard to the attempt of service on Woo Jong Kim. Second Decl. Mark S. Smith, ECF No. 75.

1    **FACTUAL BACKGROUND**[6]

2        The Complaint was filed on November 9, 2015, and asserts various claims including fraud,

3    breach of fiduciary duty, RICO, and other related claims. The Complaint asserts that San Yeon Hahn

4    established SPPC as a Guam corporation in 2000, and hired Suhr and Michael Hahm ("Hahm") as

5    the company's president and vice president. Compl. at ¶49, ECF No. 1. Dalalo was the Comptroller

6    and Secretary of SPPC. *Id.* at ¶13. SPPC was formed for the principal purpose of engaging in the

7    operation of a petroleum company and related enterprises and was not in the business of real property

8    acquisition and development except in furtherance of its operation of a petroleum company and

9    related enterprises. *Id.* at ¶23.

10       In February 2002, SY Hahn suffered a debilitating stroke and had to have a guardian

11   appointed over him and a trust was created over some of his assets, with Woo Jong Kim ("WJ Kim")

12   appointed as the trustee. *Id.* at ¶49. During SY Hahn's period of debilitation through his death in

13   August 2008, the Complaint asserts a dispute arose over the control and ownership of SY Hahn's

14   assets. *Id.* It was further alleged that

15       WJ [Kim], in association with Suhr, Hahm, [Gi Tae Kim][7] and others, and in breach
         of his fiduciary duties as trustee to SY Hahn's trust, exploited these circumstances
16       in a pattern of activity designed to fraudulently and wrongfully misappropriate SY
         Hahn's assets, by false and fraudulent pretenses, concealing evidence of their
17       wrongful activities from SY Hahn, SY Hahn's guardian, SY Hahn's family, and
         others, using the mail, the wire, telephone, facsimile, internet, e-mails, and letters, in
18       interstate and foreign commerce, between Guam, Korea, and the United States.

19   *Id.*

20       Examples of the claimed fraudulent conduct included (1) transferring SY Hahn's majority-

21   owned shares in SPPC to others who were under WJ Kim's control with no consideration, *id.* at

22   ¶¶50-51, and (2) entered into a series of fraudulent multi-million dollar loan transactions for

23

24   _____

25       [6] These "facts" are taken primarily from the Complaint. While the court acknowledges that
     SPPC has submitted a Proposed FAC, because the court has not yet granted SPPC's request to file
26   an amended complaint, the court will limit this factual recitation to the allegations contained in the
     original Complaint.

27       [7] According to the Complaint, Gi Tae Kim ("GT Kim") was an officer and/or director of
28   SPPC. *Id.* at ¶11.

1  themselves and for companies and other entities that would benefit them or others personally but

2  would expose SPPC to extreme and unreasonable risk and financial ruin. *Id.* at ¶55. The Complaint

3  asserted that Suhr, Hahm, GT Kim, Dalalo and WJ Kim and others took these actions despite

4  knowing that prior to 2007, SPPC had a senior loan outstanding (the "Outstanding Loan") with

5  Hanmi Bank in California which was secured by SPPC's assets. *Id.* at ¶¶53-54. Under the terms

6  of the Outstanding Loan, SPPC was prohibited from assuming any further liability or indebtedness,

7  including guaranteeing any other loans, without Hanmi Bank's consent. *Id.* at ¶53.

8  More specifically, SPPC alleged that on or about February 27, 2007, Suhr, Hahm, GT Kim,

9  Dalalo and others, purportedly in their capacities as officers and/or directors of SPPC, caused SPPC

10  to enter into a CB Subscription and Purchase Agreement with and issue Convertible Bonds

11  Certificates Nos. 1-1, 1-2 and 1-3[8] to Byong Sik Soh and Yoongi Industry Co., Ltd.[9] *Id.* at ¶68. The

12  CB Subscription and Purchase Agreement (the CB Agreement") was signed by Suhr as President and

13  CEO of SPPC and by Chang Rok Soh ("Chang") on behalf of the Bondholders, purportedly through

14  a power of attorney he held for both. *See* Transaction Docs., ECF No. 1-4.

15  Pursuant to the Transaction Documents, SPPC, as the issuer, sold $3 million in convertible

16  bonds to the Bondholders, and this principal amount would bear interest at a rate of five percent

17  (5%) per annum until paid in full. *Id.* at ¶¶68-69 and Transaction Docs., ECF No. 1-4. The

18  Transaction Documents provided that all principal and interest on the bonds would be due and

19  payable on March 1, 2010, the maturity date. *Id.* at ¶72. The Transaction Documents further

20  provided that payments of the principal "will be made only against presentation and surrender of the

21  Bonds at the specified office" of SPPC and that the Bondholders "will not be entitled to any payment

22  of principal for any delay after the due date . . . if the Bondholder is late in surrendering its Bonds[.]"

23  *Id.* at ¶¶70-71 and Transaction Docs., ECF No. 1-4.

24

---

25  [8] The CB Subscription and Purchase Agreement and the Convertible Bonds Certificates are

26  collectively referred to as the "Transaction Documents." A copy of the Transaction Documents are attached to the Complaint as Exhibit 4. *See* ECF No. 1-4.

27  [9] Byoong Sik Soh ("Soh") and Yoongi Industry Co., Ltd. ("Yoongi") are collectively referred

28  to as the "Bondholders."

1    SPPC represented in the Transaction Documents that it would "use all amounts received by

2    it as a result of the issuance of the Bonds hereunder in connection with the operation of its

3    businesses." *See* CB Agreement at ¶3.3, Transaction Docs., ECF No. 1-4.    Despite this

4    representation, the Complaint alleged that the proceeds of the loan transaction were paid directly to

5    and for the sole benefit of defendants MB Guam, Inc. ("MB Guam")[10] and Paradise Fund I, L.P.

6    ("Paradise LP").[11]  Compl. at ¶¶75, 78-79. 83-85.   The Complaint asserted that the Bondholders and

7    Chang knew that the proceeds of the loan transaction were being paid directly to and for the sole

8    benefit of MB Guam and/or Paradise LP, and that Chang would thereafter obtain a partnership

9    interest in Paradise LP through the fraudulent transfer of the proceeds of the loan transaction. *Id.*

10   at ¶79.

11   According to the Complaint, on March 1, 2007, SPPC received a wire transfer of $3 million

12   from the Bondholders. *Id.* at ¶82. Thereafter, on or about March 6, 2007, Suhr, Hahm, GT Kim,

13   Dalalo and others, in their respective capacities as officers and/or directors of SPPC, caused

14   $2.5 million to be wire transferred directly to MB Guam. *Id.* at ¶83.  On or about March 15, 2007,

15   these same individuals caused the wire transfer of the $500,000 balance of the loan proceeds directly

16   to MB Guam. *Id.* at ¶84.  The $3 million dollars was subsequently transferred by MB Guam to

17   Paradise LP, on behalf of the Bondholders and Chang. *Id.* at ¶85.

18

19   [10] According to the Complaint, MB Guam is not an affiliate or subsidiary of SPPC but is an

20   entity entirely separate and apart from SPPC. Compl. at ¶28. MB Guam was allegedly formed for
     the purposes of engaging in the fraudulent loan transaction alleged in the Complaint and, at the

21   relevant times alleged therein, MB Guam owned no assets and had no capitalization. *Id.* at ¶29.
     Additionally, MB Guam's officers, directors and/or owners were Suhr, Hahm and WJ Kim. *Id.*

22   at ¶27.

23   [11] According to the Complaint, Paradise LP is a limited partnership organized and existing

24   under the laws of Guam and was formed for the principal purpose of investing in and developing real
     estate in Guam. Compl. at ¶¶42-43. Paradise LP is not an affiliate of SPPC and is an entity entirely

25   separate and apart from SPPC. *Id.* at ¶46. The General Partner of Paradise LP was Sunwill
     Investments, LLC, and the Limited Partners of Paradise LP were MCC Capital, LLC, Richard B.C.

26   Lee and defendant Chang. *Id.* at ¶44. SPPC further alleges that at the time the Transaction
     Documents were executed, Suhr and Hahm also had interests in Paradise LP. *Id.* at ¶76.

27   Additionally, WJ Kim  was a Manager and Member of the General Partner of Paradise LP. *Id.*

28   at ¶77.

1    SPPC alleged that there was no true consideration or actual benefit received by it for the

2    purported loan transaction. *Id.* at ¶88.  SPPC asserted that on or about March 10, 2010, Dalalo (who

3    was then the SPPC Comptroller and Secretary), with the participation of and direction and

4    instruction by Suhr, Hahm, GT Kim and others, informed an SPPC shareholder who had been

5    inquiring about the wire transfers that "SPPC's bank account was [merely] used to facilitate the

6    transfer of $3,000,000 to MB Guam[, t]hus, these transfers were not recorded on SPPC's book." *Id.*

7    at ¶86 and Ex. 5 to Compl, ECF No. 1-5.

8    SPPC claimed that in furtherance of the fraudulent loan scheme and in continued efforts to

9    conceal the transactions, not one notice or demand was transmitted to SPPC by the Bondholders or

10   Chang, nor was there any communication whatsoever by the Bondholders or Chang to SPPC with

11   respect to the payment of the debt purportedly reflected in the Transaction Documents. Compl.

12   at ¶87.  Additionally the Bondholders and Chang never made a presentation or surrender of the

13   Bonds to SPPC as required by the Transaction Documents. *Id.*

14   In furtherance of the fraudulent loan schemes, Suhr, Hahm, GT Kim, Dalalo, WJ Kim and

15   others, in association with and with the active participation of the Bondholders and Chang, concealed

16   the Transaction Documents from SPPC and its auditors, attorneys, employees and shareholders and

17   others who would have prevented the scheme had the facts of the scheme not been concealed. *Id.*

18   at ¶¶93-94.

19   Finally, on or about February 26, 2015, without any prior notice, demand or communication

20   with SPPC and without any presentation and surrender of the Bonds to SPPC, the Bondholders filed

21   an action in Seoul Central District Court, South Korea, seeking the enforcement of the Transaction

22   Documents (the "South Korea Lawsuit"). *Id.* at ¶102.  On or about August 20, 2015, SPPC was

23   served with the documents related to the South Korea Lawsuit. *Id.* at ¶103.  SPPC contends that this

24   was the first and only notice SPPC received concerning the Transaction Documents, the debt

25   purportedly reflected and represented therein, and the fraudulent actions committed by Suhr, Hahm,

26   GT Kim, Dalalo, WJ Kim, MB Guam, Paradise LP and others, in association with and with the

27   active participation of the Bondholders and Chang. *Id.*  Thereafter, SPPC initiated the instant

28   action.

1         In the first seven counts of the Complaint, SPPC alleged that the Transaction Documents

2 were unenforceable for various reasons, and these counts simply raised defenses that SPPC may have

3 with respect to the South Korea Lawsuit. In the eighth count, SPPC alleged a claim of Fraud against

4 various defendants, while the ninth count alleged a claim for Conspiracy to Commit Fraud. The

5 tenth through thirteenth counts alleged Breached of Fiduciary Duty by Suhr, Hahm, GT Kim and

6 Dalalo, respectively. The fourteenth count alleged a Breach of Fiduciary Duty by Doe Defendants,

7 and the fifteenth count alleged the various defendants participated in or aided and abetted the breach

8 of a fiduciary duty. The sixteenth through nineteenth counts alleged claims arising under RICO. The

9 twentieth count alleged Civil Conspiracy, the twenty-first count alleged the Transaction Documents

10 were illegal, and the twenty-second count alleged Tortious Interference with Contract. Finally, the

11 twenty-third count alleged Suhr, Hahn, GT Kim, Dalalo and others abused their representative

12 capacities in relation to the fraudulent loan scheme associated with the Transaction Documents.

13                                       **DISCUSSION**

14         1.       <u>Motions to Strike and Motion for Leave</u>

15         In the Motion to Strike, Suhr urged this court to strike the Smith Declaration on the basis that

16 said declaration and the exhibits thereto were filed in violation of Rules 6(c)(2)[12] and 59(e)[13] of the

17 Federal Rules of Civil Procedure. Specifically, Suhr argued that the Smith Declaration should have

18 been filed on April 4, 2016, when SPPC filed the Motion for Reconsideration, not four months later

19 in violation of Rule 6(c)(2). Mem. P.&A. in Supp. Mot. to Strike at 2-3, ECF No. 57. Suhr further

20 asserted that the filing of the Smith Declaration violated Rule 59(e) and the Ninth Circuit's

21 instruction that a motion for reconsideration under Rule 59(e) "may not be used to raise arguments

22 or present evidence for the first time when they could reasonably have been raised earlier in the

23 litigation." Mem. P.&A. in Supp. Mot. to Strike at 3, ECF No. 57 (quoting *Marlyn Nutraceuticals,*

24 *Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)). Suhr asserted that the

25 ────────────────

26        [12] In pertinent part, this rule provides: "Any affidavit supporting a motion must be served with the motion." Fed. R. Civ. P. 6(c)(2).

27

28        [13] This rule provides in its entirety: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

1   evidence SPPC sought to introduce through the Smith Declaration, namely the 2009 deposition

2   transcripts of WJ Kim, could have been provided to the court much earlier in the litigation – for

3   example, in a timely filed opposition to Suhr's Motion to Dismiss – and because the Smith

4   Declaration could have been filed earlier, Suhr maintained it would not have been permissible for

5   SPPC to file it with SPPC's Motion for Reconsideration, let alone four months after it had filed said

6   motion. Mem. P.&A. in Supp. Mot. to Strike at 3, ECF No. 57.

7        In its response to the Motion to Strike, SPPC essentially conceded that its filing of the Smith

8   Declaration violated Rule 6(c)(2). SPPC's Resp. to Mot. to Strike at 1-2, ECF No. 60. SPPC

9   asserted, however, that WJ Kim's transcripts should not be stricken since SPPC could seek leave of

10  court to permit the late filing of said transcripts. *Id.* at 2. SPPC did so in filing its Motion for Leave.

11  *See* ECF No. 61.

12       In light of the filing of SPPC's later motion which seeks leave to file WJ Kim's deposition

13  transcripts in support of SPPC's Motion for Reconsideration, the court hereby DENIES Suhr's

14  Motion to Strike as moot.

15       As for the Second Motion to Strike, Suhr asked the court to strike the Second Smith

16  Declaration and portions of SPPC's Motion for Leave Reply. With regard to the Second Smith

17  Declaration, Suhr asserted that its filing violated Rule 6(c)(2) since the declaration and the portions

18  of the WJ Kim deposition transcripts should have been filed with SPPC's Motion for Leave and that

19  SPPC should not have waited to file these documents with its reply brief. Additionally, Suhr argued

20  that the Second Smith Declaration does not demonstrate personal knowledge of the matters asserted

21  therein as required by Federal Rule of Evidence 602 and does not demonstrate the declarant's

22  competence to authenticate the Korean language document attached thereto as Exhibit 3. Finally,

23  Suhr contends that the Motion for Leave Reply contained new arguments in support of its Motion

24  for Leave that were not raised in the original motion and that are not responsive to Suhr's opposition

25  to said motion. Accordingly, Suhr asked that these portions of the Motion for Leave Reply be

26  stricken.

27       In response, SPPC contends that it did not make any new arguments in the Motion for Leave

28  Reply but instead these issues were raised in direct response to Suhr's assertions in his opposition

1    to the Motion for Leave to File Deposition Transcripts.  The court concurs with SPPC.  Suhr raised

2    various arguments in his opposition to the Motion for Leave to File Deposition Transcripts, and

3    SPPC had the right to respond to these issues in its reply brief and attach any evidence it had to

4    counter Suhr's arguments in a supporting affidavit to its reply brief.  Accordingly, the court hereby

5    DENIES Suhr's Second Motion to Strike.

6          With regard to the Motion for Leave, SPPC requested that the deposition testimony of WJ

7    Kim be accepted by this court when ruling upon SPPC's Motion for Reconsideration.  SPPC claimed

8    that its Motion for Reconsideration argued that adjudication on the merits is preferred and that less

9    drastic sanctions should be taken with respect to the dismissal of Suhr from the case.  *See* Mot. for

10   Leave to File Dep. Tr. at 2, ECF No. 61.  SPPC asserted that the depositions "support[ed] its legal

11   theory of the fraud committed against Plaintiff, along with the other claims asserted against Suhr and

12   co-conspirators."  *Id.* at 2-3.  SPPC believed that the deposition transcripts would "assist the court

13   in determining whether Plaintiff's factual allegations are plausible and meet the *Twombly-Iqbal*

14   standards."  *Id.* at 3-4.  SPPC further alleged that the use of WJ Kim's deposition transcripts is

15   permissible under Fed. R. Civ. P. 32(a)(4)[14] since SPPC "has made numerous attempts to serve WJ

16   Kim with no success" and SPPC claimed that WJ Kim should be considered an "unavailable

---

[14]  This rule provides:

> (4)  Unavailable Witness.  A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
>> (A)  that the witness is dead;
>> (B)  that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;
>> (C)  that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;
>> (D)  that the party offering the deposition could not procure the witness's attendance by subpoena; or
>> (E)  on motion and notice, that exceptional circumstances make it desirable – in the interest of justice and with due regard to the importance of live testimony in open court – to permit the deposition to be used.

Fed. R. Civ. P. 32(a)(4).

1  witness" based on SPPC's belief that WJ Kim is "currently evading law enforcement officials in

2  Korea and is believed to be hiding in the Los Angeles, California area." *Id.* at 4.

3      In opposition to the Motion for Leave, Suhr raises various arguments why the court should

4  not consider the WJ Kim deposition transcripts with regard to SPPC's Motion for Reconsideration.

5  Pertinent to the discussion here is Suhr's argument that the transcripts are inadmissible under

6  Rule 32(a)(1)[15] of the Federal Rules of Civil Procedure. Suhr asserts that while SPPC contends that

7  the transcripts are admissible under Rule 32(a)(4), said rule is not applicable unless SPPC first

8  satisfies the requirements of Rule 32(a)(1). In this case, Suhr argues that SPPC has not satisfied the

9  requirement under Rule 32(a)(1)(A) since SPPC has produced no evidence that Suhr was present at

10 the deposition of WJ Kim or that he had reasonable notice of it.

11      In its reply brief, SPPC concedes that WJ Kim's deposition was "completed in a separate case

12 by different attorneys and different parties." Mot. for Leave Reply at 6-7, ECF No. 74.

13 Nevertheless, SPPC urges this court to adopt a liberal interpretation of Rule 32(a) which focuses the

14 inquiry on whether the prior cross examination of the deponent would satisfy a reasonable party who

15 opposes the admission of the deposition.[16] *Id.* at 7. SPPC cites to numerous cases which recognize

16

17      [15] This rule provides:

18

19      (1) In General.   At a hearing or trial, all or part of a deposition may be used against
        a party on these conditions:

20              (A) the party was present or represented at the taking of the deposition or had
                reasonable notice of it;

21              (B) it is used to the extent it would be admissible under the Federal Rules of
                Evidence if the deponent were present and testifying; and

22              (C) the use is allowed by Rule 32(a)(2) through (8).

23 Fed. R. Civ. P. 32(a)(1).

24

25      [16] SPPC cites to the case of *Hub v. Sun Valley Co.*, 682 F.2d 776, 778 (9th Cir. 1982), where,
   in reviewing an earlier version of Rule 32(a), the Ninth Circuit stated:

26

27      Rule 32(a) requires that the prior and present lawsuits involve the "same subject
        matter" and "the same parties or their representatives or successors in interest."
        These requirements have been construed liberally in light of the twin goals of fairness
        and efficiency. The accepted inquiry focuses on whether the prior cross-examination

28

1    that although a deposition is generally not admissible against a party who did not have the

2    opportunity to be present at its taking, an exception to this rule exists if there was a predecessor party

3    or an adversary present with the same motive to cross-examine the deponent and there is identity of

4    issues in the case in which the deposition was taken with the one in which it is sought to be provided.

5    *See* Motion for Leave Reply at 7-8.  SPPC argues that the subject matter in the instant case is

6    identical to the issues in the California action in which WJ Kim's deposition was taken – what and

7    whose money was invested in Paradise LP and where did it go?  SPPC contends that the attorney

8    who was present for the deposition – specifically the attorney for Richard Lee – questioned WJ Kim

9    to determine how the investment money, including Chang's investment, was applied to Paradise LP

10   and how Paradise used the investments.  SPPC claims that although Suhr was not present at WJ

11   Kim's deposition, Suhr's attorney would have likely asked the same questions of WJ Kim that

12   Richard Lee's attorney asked.  Because the subject matter and the motive of the parties deposing WJ

13   Kim are similar, SPPC asserts the deposition transcripts should be admissible for this court to

14   consider.

15        The court disagrees.  SPPC has not provided this court with proof that the California action

16   presented issues that were identical or similar to the issues before the court.  A copy of the complaint

17   in the California action was not filed with this court to review.  Additionally, it is not clear to this

18   court that Suhr's interests are aligned with Richard Lee's interests.  Here, the Complaint alleges that

19   MCC Capital LLC and Richard Lee – the plaintiffs in the California action – were limited partners

20   of Paradise LP and that Suhr also had an interest in Paradise LP,  Compl. at ¶¶44 and 76, ECF No. 1.,

21   but these allegations alone are insufficient for the court to conclude that Suhr and Richard Lee shared

22   the same motive to question WJ Kim.  Because SPPC has failed to show that the subject matter in

23   the instant case is identical to the issues in the California action, nor has it shown that Richard Lee's

24   interest were so aligned with Suhr's that it could be said that they shared the same motive to question

25

26   _____

            would satisfy a reasonable party who opposes admission in the present lawsuit.
27          Consequently, courts have required only a substantial identity of issues.

28   *Id.* at 778.

WJ Kim, the court finds that SPPC has not satisfied the requirement of Rule 32(a)(1)(A). Accordingly, the court DENIES the Motion for Leave and will not consider the WJ Kim deposition transcripts when ruling upon the Motion for Reconsideration.[17]

## 2.   Motion for Reconsideration

Turning now to the Motion for Reconsideration, SPPC asks this court to reconsider its Dismissal Order and requests that it be permitted to amend its Complaint. SPPC cites to CVLR 7(p) of this court's local rules which governs motions for reconsideration and provides in pertinent part:

> (1) Standard. Motions for reconsideration are generally disfavored. A motion for reconsideration of the decision on any motion may be made only on the grounds of:
>    (A) a material difference in fact or law **from that represented to the Court before such decision** that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or
>    (B) the emergence of new material facts or a change of law **occurring after the time of such decision**, or
>    (C) a manifest showing of a failure to consider material facts **presented to the Court before such decision**.

CVLR 7(p) (emphasis added).

SPPC then states that it "has recently discovered new facts which support the Amended Complaint it intends to file. A new party will be added and additional facts inserted expounding plausible claims against the Defendants." Mot. for Recons. at 5, ECF No. 22. As pointed out by Suhr, however, SPPC does not state what these new facts are, when or how it discovered them, or why it could not have discovered them earlier by exercising reasonable diligence.

The court finds that CVLR 7(p) does not provide SPPC with a basis for seeking reconsideration from this court. Under CVLR 7(p)(1)(A) and (C), SPPC did not present any facts to the court before the Dismissal Order was entered since SPPC never opposed Suhr's Motion to Dismiss. As for CVLR 7(p)(1)(B), SPPC has not shown that any new material fact emerged after the court's Dismissal Order. Thus, reconsideration under CVLR(p) is simply not available.

SPPC's Opposition notes that in the Ninth Circuit,

[a]lthough Rule 59(e) permits a district court to reconsider and amend a previous

---

[17] As will be discussed *infra*, the ultimate outcome of the Motion for Reconsideration would not change even if the court granted the Motion for Leave.

order, the rule offers **an extraordinary remedy, to be used sparingly** in the interests of finality and conservation of judicial resources.   Indeed, a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.

*Kone Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotations and citations omitted) (emphasis added).   In this case, the court agrees with Suhr that SPPC has not demonstrated any highly unusual circumstances that would warrant the extraordinary remedy of reconsideration of a dispositive motion that went unopposed for months.

As noted in Suhr's Opposition, SPPC's Motion for Reconsideration does not analyze in any meaningful manner the five factors relied upon by the court in the Dismissal Order.   Thus, SPPC clarifies in its Reply brief that the basis for its Motion for Reconsideration is that the court erred in not adequately weighing and considering the fifth factor in the Dismissal Order, specifically that there was a less drastic sanction available and appropriate.   SPPC Reply at 2-3, ECF No. 34.   Suhr contends that granting Suhr's Motion to Dismiss was too harsh a remedy because Suhr had not filed an answer and the Complaint was supported by facts plausibly stating causes of actions against the defendants, because SPPC did not receive notice of the court's intent to dismiss nor was it provided an opportunity to respond, and because SPPC has been diligent and respectful of all the court orders issued herein.   Mot. for Recons. at 3-4, ECF No. 22.

The Ninth Circuit has stated that the fifth factor which focuses on the availability of less drastic sanctions than dismissal "involves consideration of three subparts:   whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." *Valley Eng'rs. Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).   "This 'test' is not mechanical.   It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow[.]" *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

With regard to the first and second subparts, the court's Dismissal Order did not explicitly discuss alternative sanctions nor did it try any.   Rather, the order recognized that "[t]o dismiss [SPPC]'s claims is a harsh measure – but [SPPC] does not oppose a dismissal, nor has [SPPC] filed

1    a motion for an extension of time to file an opposition to the motion to dismiss." Dismissal Order

2    at 2, ECF No. 17.  SPPC suggests that the court should have considered less drastic sanctions such

3    as requiring SPPC to respond to Suhr's Motion to Dismiss or even allowing it to file an amended

4    complaint since a resolution on the merits is preferred.  Mot. for Recons. at 4-5, ECF No. 22.  But

5    SPPC forfeited these so-called "less drastic sanctions" by failing to take any action to oppose Suhr's

6    Motion to Dismiss.  The court's local rules provide that an opposition to a motion must be filed

7    within 21 days after the filing of the motion.  *See* CVLR 7(f).[18]  SPPC did not file an opposition

8    within the 21-day deadline, nor did SPPC seek an extension under Rule 6(b) of the Federal Rules

9    of Civil Procedure to file an opposition.  The court cannot be expected to read SPPC's mind that it

10   intended to amend its Complaint to address the deficiencies noted in Suhr's Motion to Dismiss.

11   Certainly, SPPC could have filed an amended complaint within 21 days afer Suhr's Motion to

12   Dismiss, as permitted in Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, but SPPC failed

13   to do so.  Additionally, if SPPC wished to file an amended complaint, it could have stated so in an

14   opposition to the motion to dismiss as parties customarily do, but SPPC did not take such action.

15   SPPC is represented by two very experienced attorneys who have practiced before the court for many

16   years in numerous civil and criminal cases.  These attorneys should be quite familiar with the federal

17   civil and local rules of practice.  The court further notes that its Dismissal Order was not issued

18   immediately after the passing of the 21-day deadline to file an opposition.  Rather, the Dismissal

19   Order was issued 63 days after the opposition deadline had passed, with SPPC taking no affirmative

20   action in the interim to let the court know that SPPC intended to oppose the motion or wished to

21   amend its Complaint to cure any alleged deficiencies.

22          With regard to whether the court warned SPPC about the possibility of dismissal, the court

23   did not need to issue such a warning because again, both of SPPC's attorneys knew or should have

24   known that the dismissal is a potential option for the court when a motion to dismiss has been

25   unopposed for more than two months and no extension had been sought by SPPC to file an

26   _____

27          [18]    The court's new civil local rules, which are posted on the court's website,  were
     adopted on January 23, 2015, by General Order 15-0001, and became effective on February 15,
28   2015. *See* www.gud.uscourts.gov/sites/default/files/orders/General-Order-15-0001.pdf

1    opposition.

2        Thus, based on the above discussion, the court finds that it did not err in considering the five

3    factors discussed in the Dismissal Order. Accordingly, the court DENIES the Motion for

4    Reconsideration.

5        Furthermore, even if the court should have considered the possibility of allowing SPPC to

6    file an amended complaint, the court finds that amendment would be futile. First, as noted by Suhr,

7    the fraud allegations against Suhr and the other alleged co-conspirators are based on activities that

8    took place in 2007 – nine years ago. The statute of limitations for fraud actions is three years from

9    the discovery by the aggrieved party of the facts constituting the fraud. 7 GUAM CODE ANN.

10   § 11305(d).[19]

11       "A claim may be dismissed . . . on the ground that it is barred by the applicable statute of

12   limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von*

13   *Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting

14   *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). When a complaint is barred

15   on its face based on the statute of limitations, the plaintiff has the burden of pleading around the bar

16   by alleging that it did not discover the alleged fraud until a point in time within the statutory

17   limitation period. *See Prentiss v. McWhirter*, 63 F.2d 712, 713 (9th Cir. 1933) ("Under the practice

18   in the state of California, where the fraud is alleged to have been perpetrated more than three years

19   before the commencement of the action, the plaintiff must plead facts to avoid the bar of the statute

20   of limitations by alleging that the fraud was not discovered until a time within three years of the

21   commencement of the action and the circumstances of the discovery."); *Taitano v. Calvo Fin. Corp.*,

22   2008 Guam 12, ¶52 (in an action alleging fraud, the plaintiffs "were required to specifically plead

23   facts showing why they were unable to make an earlier discovery despite reasonable diligence.").

24       In the Complaint herein, SPPC asserts that Suhr and other defendants "concealed the

25   Transaction Documents from SPPC, its attorneys, employees, auditors, shareholders and others" and

26

27       [19]  This statute provides: "(d) An action for relief on the ground of fraud or mistake. The
     cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved
28   party of the facts constituting the fraud or mistake."

that "the first and only notice SPPC received concerning the Transaction Documents" was when it was served with documents related to the South Korea Lawsuit on August 20, 2015. Compl. at ¶¶93 and 103. These allegations are repeated in the Proposed FAC at paragraphs 107 and 117. *See* ECF No. 22-1. These assertions, however, are directly contradicted by the Declaration of Anita P. Arriola (the "Arriola Declaration"),[20] which Suhr filed in support of its Opposition to the Motion for Reconsideration. *See* Arriola Decl. at ¶¶8 and 10-12 and Exs. 4[21] and 8-10 thereto, ECF No. 26. According to the declaration, on May 11, 2009, Attorney Arriola provided Attorney Smith – who had then been retained by SPPC – with executed copies of the CB Subscription and Purchase Agreement (Bates stamped McCully000908 through McCully000920), which is part of the Transaction Documents at issue here. *Id.* at ¶¶6 and 12 and Exs. 3 and 10 thereto. Based on a the court's review of the Arriola Declaration and the exhibits thereto, SPPC has had various emails and documents related to the alleged fraudulent loan scheme at issue in this lawsuit in its possession since mid-2009, and neither the Complaint nor the Proposed FAC alleges how SPPC could not have discovered through the exercise of reasonable diligence the facts supporting its claims until sometime in 2015. The court thus concludes that it would have been futile to allow SPPC to amend its Complaint since the fraud claims are barred by the three-year statute of limitation.

Second, the court further finds that amendment would be futile since SPPC's RICO claims regarding its issuance of convertible bonds under the CB Agreement are barred as a matter of law by the Private Securities Limitation Reform Act of 1995 ("PSLRA"), codified in relevant part at 18

---

[20] Anita P. Arriola is an attorney licensed to practice law on Guam and was retained by Duncan McCully ("McCully") in or about April 2009 to represent McCully and his law firm's interests with respect to McCully's work on transactions in which he represented SPPC. Arriola Decl. at ¶¶1-2, ECF No. 26.

[21] The Arriola Declaration states that "Exhibit 5 is a true and accurate copy of a June [16], 2009, letter that [Attorney Arriola] hand delivered to Attorney Smith" which also included a "disc containing transaction related documents Bates stamped McCully001184-McCully009042." Arriola Decl. at ¶8, ECF No. 26. In reviewing the exhibits, however, the court notes that Attorney Arriola may have inadvertently mis-numbered Exhibits 4 and 5, since Exhibit 4 is the June 16th letter from Attorney Arriola and Exhibit 5 is a June 15th letter from Attorney Smith to Attorney Arriola.

U.S.C. §1964(c).[22]  In addition to its criminal prohibitions, RICO provides a private cause of action that entitles a successful private plaintiff to treble damages and reasonable attorney's fees. 18 U.S.. § 1964(c).  To establish the basic elements of a civil RICO claim, a private plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  A plaintiff must also allege that he was injured in his business or property "by reason of" the RICO violation.  *Id.*

The PSLRA sought to curtail abusive litigation by eliminating securities fraud as a predicate act in civil RICO claims.  Through enactment of the PSLRA, Congress intended not just "to eliminate securities fraud as a predicate offense in a civil RICO action, but also to prevent plaintiffs from attempting to plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud."  *Bald Eagle Area Sch. Dist. V. Keystone Financial, Inc.*, 189 F.3d 321 (3d Cir. 1999) (quoting H.R. Conv. Rep. No. 104-369, at 47 (1995)) (internal quotation marks omitted) *; Howard v. America Online Inc.*, 208 F.3d 741, 749-50 (9th Cir.), *cert. denied*, 531 U.S. 828 (2000) (plaintiff cannot assert RICO claim based on predicate acts that sound in securities fraud even if the claim is pled as a matter of mail or wire fraud).  Additionally, courts have generally recognized that where a plaintiff alleges a "single scheme" and any predicate act is barred under the PSLRA, the entire RICO claim is precluded.  *See In re Libor–Based Financial Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 730 (S.D. N.Y. 2013); *Gilmore v. Gilmore*, No. C09–6230, 2011 WL 3874880, at *4 (S.D. N.Y.  Sept.1, 2011).

---

[22]  This statute provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, **except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962**.

18 U.S.C. § 1964(c) (emphasis added).

1    In light of the PSLRA, the court must examine whether SPPC's RICO claim is based on

2    conduct of the type that would have been actionable as fraud in the purchase or sale of securities.

3    According to the allegations in the Complaint, Suhr and others, on behalf of SPPC, entered

4    into the CB Agreement with the Bondholders.  Compl. at ¶68, ECF No. 1.  Under the terms of the

5    CB Agreement, SPPC issued and the Bondholders subscribed to $3 million in convertible bonds ,

6    which had a maturity date of March 1, 2010.  *Id.* at ¶¶68 and 72 and Ex. 4 thereto, ECF No. 1-4.

7    Additionally, in lieu of cash payments for the $3 million given to SPPC, the Bondholders had

8    "Conversion Rights,"  the option of exchanging the convertible bonds for shares in SPPC of equal

9    value.  *See* CB Agreement (Ex. 4 to Compl), ECF No. 1-4.  This convertible bond is a type of debt

10   security.  *Agent Classic Convertible Arbitrage Fund LP v. Rite Aid Corp.*, 315 F. Supp.2d 666, 675

11   (E.D. Pa. 2004) ("Like common stock, convertible bonds are securities[.]").  "The definition of a

12   security is 'a flexible rather than a static principle, one that is capable of adaptation to meet the

13   countless and variable schemes devised by those who seek the use of the money of others on the

14   promise of profits.'" *Aversano v. Greenbert Traurig, LLP*, 753 F. Supp.2d 1063, 1068 (C.D. Ca.

15   2010) (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946) (noting also "the Supreme Court's

16   repeated rejection of a narrow and literal reading of the definition of securities")).  Thus, as argued

17   by Suhr in his Opposition to the Motion for Reconsideration and his Motion to Dismiss, the

18   convertible bonds SPPC issued under the CB Agreement are subject to the securities laws of the

19   United States and Guam.  SPPC's RICO claims all arise out of the CB Agreement which is a

20   security, and, as such, SPPC's claims related to alleged securities fraud are not cognizable under

21   RICO pursuant to Section 1964(c).

22   Based on the above, the court would not grant SPPC leave to amend its Complaint since

23   amendment would be futile based on the statute of limitations on fraud claims and because the

24   claims arising under the CB Agreement are not cognizable RICO claims.  Suhr raised these very

25   arguments in his Opposition to the Motion for Reconsideration, *see* ECF No. 25 at 24, yet SPPC

26   never addressed these futility issues in its Reply.  *See* ECF No. 34.   As noted earlier, the

27   Complaint's alleged RICO claims form the only basis for this court's federal question jurisdiction,

28   and the court declines to exercise supplemental jurisdiction over any other local law claims that may

1    survive.

2         3.    Dalalo Motion to Dismiss

3         Dalalo's Motion to Dismiss raises varies grounds for dismissal, among which is the statute

4    of limitation argument and that SPPC's RICO claims arise out of the CB Agreement, which is a

5    security bond, and are not cognizable under RICO.  *See* Dalalo Mot. to Dismiss at 12, 14-16, ECF

6    No. 12.  The court's ruling and analysis *supra* with regard to the Motion for Reconsideration applies

7    equally to Dalalo's argument here.  Accordingly, the court GRANTS Dalalo's Motion to Dismiss.

8                                      **CONCLUSION**

9         Based on the above discussion, the court rules as follows:

10        •     Suhr's Motion to Strike (ECF No. 54) is hereby DENIED as moot;

11        •     Suhr's Second Motion to Strike (ECF No. 77) is hereby DENIED;

12        •     SPPC's Motion for Leave (ECF No. 61) is hereby DENIED;

13        •     SPPC's Motion for Reconsideration (ECF No. 22) is hereby DENIED; and

14        •     Dalalo's Motion to Dismiss (ECF NO. 12) is hereby GRANTED.

15   IT IS SO ORDERED.



**/s/ Frances M. Tydingco-Gatewood**
     **Chief Judge**
**Dated: Apr 15, 2017**